ZACHARY PROVOLT, Respondent, *vs.* THE CHICAGO, ROCK IS-LAND & PACIFIC RAILROAD Co., Appellant.

1. *Eminent domain—Condemnation of private property—Compensation—Railroads—Pre-payment as a condition precedent to surrender of land by owner —Acquiescence by owner in expenditures—Estoppel—Ejectment, etc.*—Private property cannot be taken even in the exercise of eminent domain, without compensation to the owner; and before the title can be absolutely vested by virtue of proceedings for condemnation, payment becomes indispensably necessary. But where a railroad company commences proceedings under the statute for condemnation of private property, and the commissioners award a given sum as damages, and the court decrees, that on payment thereof, title shall vest in the company, and the owner files his objections to the award and procures a higher assessment, but does not insist on pre-payment as a condition precedent to a surrender of the land, nor attempt to obstruct or in any way impede the progress of the work, and by such acquiescence, induces the company to expend large sums upon the road, he cannot maintain ejectment against the company simply on the ground of such failure of pre-payment. In the case supposed, of course the strict title will not pass to the company till the paying of the damages awarded.

The owner will, however, have other and sufficient remedies, *e. g.*, a court of equity would unquestionably interfere, if necessary, and place the road in the hands of a receiver until the damages are paid from the earnings of the road.

### *Appeal from Clinton Circuit Court.*

*J. H. Shanklin & M. A. Low,* for Appellant.

I. The Chicago & Southwestern Railway Company entered on the land in controversy, and made costly, valuable and permanent improvements thereon with the full knowledge of respondent who made no complaint until the commencement of this suit. The respondent, cannot now, after he has permitted said company to expend large sums of money thereon, and the public to acquire important interests in the road as a line of commerce and an established mail route, assert his right by ejectment or in any mode which will interrupt the continued operation of the road. (McAuley vs. W. Vt. Railw., 33 Vt., 311; Knapp vs. McAuley, 39 Vt., 275; B. & O. R. R. Co. vs. Strauss, 37 Md., 237; Illingworth vs. Manchester, &c. R. R. Co., 2 Eng. Railw. cas. 136, [*187]; Cairncross vs. Lorimer, 7 Jur., N. S., 150; Greenhalgh vs. The Manchester, &c. R. R. Co., 3 Myl. & Cr., [Eng. Ch.] 784; Kerr on Fraud & Mist., 126 to 135;

Holmes vs. Jersey, &c., 1 Beas:, 299; Duke of Devonshire vs. Elgin, 14 Beav., 530; White vs. Wakely, 26 Beav., 20; High Inj., 231, § 417; Elmslie vs. Delaware, &c., 4 Whart., 425; Delaware, &c. vs. Raritan, &c., 1 McCart., 445; Torrey vs. Camden, &c., 3 C. E. Green, 293; Goodin vs. Cin., &c. R. R. Co., 18 Ohio [St.], 169; Lindell vs. McLaughlin, 30 Mo., 28; Blair vs. Smith., 16 Mo., 273.)

II. When he stood by and saw the work going on and made no objection, the railroad company might well have supposed that he did not insist on pre-payment of his damages. And the shortest period of clear acquiescence, so as fairly to lead the company to infer that the party intends to waive his right to present payment, will conclude his right to assert the claim in any such form as to stop the running of the road after it has been put in operation, whereby the public acquire important interest in its continuance. (McAuley vs. Western Vt. Rw., *supra.*)

*S. H. Corn*, for Appellant.

I. Sections 8 and 9 of appellant's amended charter of Feb 24th, 1853, is inconsistent with Art. 5 of the amendments to the Constitution of the United States, and § 16 of Art. I, of the Constitution of the State of Missouri, because,

1st. It directs the taking of private property for public use without providing the owner thereof with a proper and adequate means of obtaining compensation. The only remedy provided is a judgment against the company, which is not sufficient. (See Walther vs. Warner, 25 Mo., 287, and cases there cited.)

2nd. Upon the tender or deposit with the clerk of the amount of the first assessment of damages, it permits the company to take possession of the land and appropriate it to its own use, without providing any means whatever of meeting the contingency of a subsequent commission reporting damages in excess of what was reported by the first; thus compelling the land owner either to take the amount of the first report, however inadequate, or to submit to a forced sale

of his land to the company, on credit. (See authorities cited above.)

The history of this case demonstrates the truth and force of the foregoing propositions. Viewers were appointed who reported the damages at seventy-five dollars; that sum is said to have been paid to the clerk of the court for respondent's use; the report was set aside; other commissioners appointed, reported the damages at one hundred and seventy-five dollars. Meanwhile the company had taken possession of the land, and long before judgment for the damages was obtained, had leased and delivered possession of the land, including respondent's land to the appellant; and the judgment became simply worthless for want of adequate means of enforcing it.

This statute and the proceedings had under it can therefore be no defense to this action.

II. If, however, it is held that the entry upon the land is justified by the statute, it is then contended that the entry authorized by the statute is for the purpose of constructing the work only, and for no other purpose; and that the occupancy thereby permitted can continue no longer than the pendency of the suit to ascertain the damages, and upon the termination of which, if the damages so ascertained are not paid, this right of possession utterly ceases and determines. The payment of the damages assessed is a condition precedent to the right of the company to occupy the land. (1 Redf. Railw., [4th. Ed.] pp. 237–240; Walther vs. Warner, 25 Mo., 277.)

III. These statutory powers for taking land are in derogation of common right and extend no further than expressly stated in the act; and it must affirmatively appear that every pre-requisite of the statute has been fully complied with. (See Redf. Railws., vol. I, [4th Ed.,] 233, 234; Lind vs. Clemens, 44 Mo., 540; Ells vs. Pacific R. R. Co., 51 Mo., 200; Anderson vs. City of St. Louis, 47 Mo., 479.)

IV. The effect of these statutory powers is nothing other than that of compelling the individual to submit to a sale of his property at an assessed price; the price to be paid is of the

essence of the sale, and the buyer does not become the owner of the thing, but by the payment of the price, unless the seller agrees to accept some other security in lieu of it; and there is no reason in ordinary cases, not calling for an exception to the general rule, why an individual should be compelled to part with his property to the public· on credit (Per Scott, Justice, in Walther vs. Warner, 25 Mo., 287, cited above.)

And the appellant can stand in certainly no better relations to the respondent than that of a vendee in possession, under a contract of purchase. And to successfully resist an action of ejectment by the vendor, it must show a compliance on its part, with the terms and conditions of the contract. · (See Glasscock vs. Robards, 14 Mo., 350; Tyler Eject., 565; Gibb vs. Sullen, 48 Mo., 237; Pierce vs. Suttle, 53 Barb., 155.)

V. Ejectment is the proper remedy. (Anderson vs. City of St. Louis, 47 Mo., 479.)

WAGNER, Judge, delivered the opinion of the court.

This was an action of ejectment to obtain possession of a part of a lot in the town of Cameron, upon which, the Chicago and Southwestern Railway had constructed its road.

The defendant in its answer alleged, that during the years 1870 and 1871, the company located and constructed its road over the land described in the petition, and on the 23rd day of February, 1871, commenced the necessary proceedings in the Circuit Court to obtain the right of way over said land; that commissioners were appointed to assess the damages sustained by the plaintiff by reason of the appropriation of the land to the use of the company; that on the 4th day of March, 1871, the commissioners reported the damages to be the sum of seventy-five dollars, which sum of money the company paid the clerk of the court for the use of the plaintiff; that exceptions to the report were duly filed by the plaintiff, and the report was set aside and other commissioners appointed to re-assess damages at the August term of the court; that upon the 15th day of March, 1871, the railway company

entered upon the land and proceeded to construct its road thereon, and did construct its road and continued to occupy the same until October, 1871, when it leased its whole line to the defendants, who have had possession and been running regular trains thereon ever since.

The replication stated that the commissioners appointed to re-assess the damages, reported the same at one hundred and seventy-five dollars, and the court at its August term thereof, for 1872, confirmed the report in favor of the plaintiff and against the company for that sum, and made an order, conditioned, upon the payment of the judgment, that the right of way over the land, for the use of the road, should vest in the company. It was admitted that the amount assessed by the last commissioners had never been paid. The court then declared the law to be for the plaintiff and gave judgment accordingly.

The charter of the company under which the proceedings for condemnation were had, provides that persons appointed to view and value the lands, shall file their report in the office of the clerk of the Circuit Court of the county in which the land is situated, and if no valid objections are made to the report, the court shall enter judgment in favor of such owner, against such company, for the amount of the damages assessed, and shall make an order vesting in the company the title to the land; that objections to the report must be filed within ten days after filing the report, which objections the judge may examine and confirm, or set aside the report and appoint three other viewers, who shall proceed in the same manner until the report is confirmed: *provided*, that in order that the progress of the work may not be impeded, after the viewers have filed their report as aforesaid, the company, after having made a tender of the amount of damages to the person entitled to the same, or made a deposit thereof with the clerk of the court in which the case is pending, shall be authorized to proceed in the construction of the work as fully as if no disagreement had arisen.

The main ground insisted upon by the plaintiff's counsel in support of the judgment below, is that the law is unconstitutional, because it takes private property for public use without providing the owner with adequate means of obtaining compensation.

In the case of Walther vs. Warner, (25 Mo., 277,) it was held that legislative acts authorizing the taking of private property for public use are unconstitutional, unless they provide the owner with a proper remedy to obtain a just compensation; and that the remedy must be an efficient one—a mere judgment against a private corporation not being sufficient. In that case the company instituted proceedings to obtain title to land on which it had located its road. A judgment was rendered against the company for the damages assessed, and an order was made transferring the title to the land to the company; and this court decided that actual payment of the damages was essential to the vesting of the title in the company.

There can be no question of the justness or soundness of the rule above laid down. No man can be deprived of his property even in the exercise of the right of eminent domain, unless he is compensated therefor; and a mere judgment which might turn out to be wholly uncollectable, would not be a compensation. Before the title can be absolutely vested by virtue of such proceedings, payment becomes indispensably necessary.

But it is a different question that we are here dealing with. There is no pretense here that the defendant has acquired a valid legal title; but the point pressed for consideration is, whether the circumstances connected with it—taking possession of the property and constructing its track and operating its road—will preclude a remedy by the action of ejectment.

Nearly all the American States have the same constitutional provision that we have, and many of them possess a similar statute to the one under which this proceeding is had. It is very clear from the record, that the plaintiff was cognizant of all the facts and knew every step taken by the company in

regard to the location, construction and operation of the road over his property. He made no objections whatever to anything that was done in that respect, only objecting to the report of the commissioners on account of the inadequacy of the assessment. He pursued the statutory course by having new commissioners appointed and his damages raised; but there his interference ceased.

The case of McAuley vs. Western Vermont Railw., (33 Vt., 311,) is strikingly in point. There the parties not agreeing as to the price of the land, the defendants procured the damages to be appraised by commissioners in the manner provided by law. After the construction of the road on the premises had been commenced, the plaintiff appealed from the award of the commissioners, and a re-appraisal took place by other commissioners appointed by the court. The road was completed and put in operation; but the money was not paid, and the plaintiff brought ejectment to recover the premises. In delivering the opinion of the court, Redfield Ch. J. said: "It being admitted, as it seems to be, that the plaintiff had full knowledge of the proceedings of the company to locate and construct their road upon his land, before and during all the time of the construction, and that he did not interfere in any way to prevent the occupation of the land for the purposes of the road, otherwise than by forbidding the hands working on the road until his damages were paid, and that on only a single occasion, it becomes an important inquiry whether he can maintain ejectment for the land, by reason of the non-payment of his damages. * * * It is undoubtedly true, that according to our general railroad statutes and the special charters in this State, the payment or deposit of the amount of the land damages assessed or agreed, is a condition precedent to the vesting of the title, or of any right in the company to construct their road, and that if they proceed in such construction without this, they are trespassers. And this has been repeatedly so held by this court.

This may have led to the misapprehension in the present case, but it certainly is a very serious misapprehension. In

these great public works the shortest period of clear acquiescence, so as to fairly lead the company to infer that the party intends to waive his claim for present payment, will be held to conclude the right to assert the claim in any such form as to the company in the progress of their works, and especially to stop the running of the road after it has been put in operation, whereby the public acquire an important interest in its continuance. The party does not, of course, lose his claim or the right to enforce it, in all proper modes. He may possibly have some rights analogous to the vendor's lien in England and here, until the legislature cut it off. But it is certain, according to the English decisions, that he cannot stop the works, and especially the trains upon the road, if he has in any sense, for the shortest period, clearly given the company, either by his express consent, or by his silence, to understand that he did not intend to object to their proceeding with their construction and operation. * * * In the present case it is not precisely a parol license under which the company claims to have built the road.

The record title to the land would be complete, with the addition of the fact of payment or the deposit of the amount of the appraisal. That is a fact resting always *in pais*. And being so, although a condition precedent, it may be waived by the party in whose favor it exists, and this by parol merely. The waiver as well as the performance, may be by parol ; and the waiver may be partial as well as total. If there was then a waiver in fact, either express or implied, by acquiescence in the proceedings of the company to the extent of not insisting upon pre-payment as a condition precedent, but consenting to let the damages be and remain a mere debt, with or without a lien upon the road-bed, as the law may turn out to be, then it is impossible " to regard the defendants in any sense in the light of trespassers or liable in ejectment."

As bearing further on this point, see the case of Baker vs. the Chicago, R. I. & P. Railw., decided at this term, *post* p. 265.

As the judgment of the court in the present case only provided that the title to the premises should vest in the company on condition of the payment of the money assessed to the plaintiff, of course, till the payment is made the strict legal title does not pass. But the plaintiff was present all the time and witnessed the progress of the work and made no objection. The company commenced proceedings under the statute for condemnation, and an award by commissioners was duly given. From this the plaintiff appealed, or what is the same thing, filed his objections, and had the amount raised. But he did not attempt to obstruct or in anywise impede the progress of the work. The plain inference was that he waived his right for pre-payment of his damages and only intended to follow his remedy on his judgment. His conduct surely led the company to believe such was his purpose and induced them to pursue a course and expend large sums of money which, otherwise, they would not have done. If plaintiff intended to rely on his rights and make present payment a condition precedent, he should have objected and forbidden the company to interfere or to do any work on his land till the question of damage was settled. But this he did not do. He acquiesced in the proceedings of the company to the extent of not insisting upon the pre-payment as a condition precedent: and after having done so, we do not think that he can maintain ejectment.

If from negotiation in regard to the price of the land, or for any other reason, there is just ground of inference that the works have been constructed with the express or implied assent of the land owner, it would seem wholly at variance with the expectation of the parties and the reason of the case, that the land owner should retain the right to enter upon the land, or to maintain ejectment.

There are other effective and sufficient remedies. A court of equity would unquestionably interfere, if necessary, and place the road in the hands of receivers, until the damages were paid from the earnings. (2 Redf. Am. Railw. Cas. 2nd Ed., 253.) But the only question that we are called upon

Baker v. Chicago, Rock Island & Pac. R. R. Co.

to decide is whether under all the facts and circumstances of this case ejectment will lie, and we think it will not.

The judgment must therefore be reversed and the cause remanded; the other judges concur, except Judge Sherwood who is absent.