McCLELLAN v. THE ST. LOUIS AND HANNIBAL RAILROAD COMPANY, *Appellant*.

DIVISION TWO.

1. **Judgment:** COLLATERAL ATTACK. A judgment rendered by a court having jurisdiction of the parties and subject-matter is not subject to collateral attack.

2. **Ejectment**: RAILROAD RIGHT OF WAY : ESTOPPEL. Ejectment will not lie on the part of a land-owner against a railroad company for a strip of land occupied as a right of way, where he has by deed, acquiescence or license induced the company to build its road on his land and to make permanent and costly improvements thereon, and this is true although the company has failed to comply with conditions subsequent as to erection of fences and cattle-guards and the like, contained in the deed from the owner to the company.

3. ———— : ——— : ——— : PURCHASER WITH NOTICE. Where the owner would be so estopped a purchaser from him with knowledge of the facts is in no better condition, and this is especially true where the latter has since his purchase, by his acts and conduct, recognized the company's title.

*Appeal from Lincoln Circuit Court.* — HON. E. M. HUGHES, Judge.

REVERSED.

THIS action of ejectment by respondent against the appellant was commenced August 24, 1887, for possession of a part of appellant's roadbed and right of way across respondent's farm in Lincoln county, Missouri. The ouster was laid January 1, 1887.

The answer of defendant admitted it was a railroad corporation, and its possession of the land sued for; denied the other allegations and relied on the statute of limitations. The answer, for a further defense, alleges that the St. Louis & Keokuk Railroad Company on August 8, 1870, obtained by purchase from Thomas G. Hutt and wife, who then owned the lands now owned by plaintiff, a deed conveying a right of way, one hundred feet wide, over said lands, and that said railroad fixed, located and established its right of way and graded the same over and upon the strip of land sued for and retained possession thereof until 1873, when it was succeeded by the St. Louis, Hannibal & Keokuk Railroad Company, which last-mentioned company, between 1873 and 1882, finished and completed and put in operation its road from Hannibal to Gilmore, Missouri, and

over and upon the lands sued for, and continued posses-
sion of said lands and operated said railroad to the
seventh day of February, 1884, at which time by order
and decree of the United States circuit court for the
eastern district of Missouri, it with all its property,
rights, etc., was placed in the hands of a receiver
appointed by said court.

That said receiver at once took possession and con-
trol of said railroad, its property, rights, etc., and
retained the same until December 18, 1885, when a sale
thereof was made by order and decree of said court to
John I. Blair who afterwards transferred and conveyed
the same to the defendant ; that the deed from said
Thomas G. Hutt to the St. Louis & Keokuk Railroad
Company contained the following clause : "That said
railroad company shall construct two cattle passes
under their track on said premises at such points as
shall be selected by their said grantor, Thomas G. Hutt,
and shall also build and maintain a good post and
board fence on each side of their track through all
inclosures on said premises within three months after
said road shall be completed and trains run to Troy,
Missouri ; also make two crossings over said track in
the field."

That, in 1883, the plaintiff, claiming to have pur-
chased the lands of said T. G. Hutt, commenced his
suit in the circuit court of Lincoln county, Missouri, to
have the grant of the right of way made by said Hutt
declared forfeited by reason of non-compliance with
the requirements in said deed, and in 1884, without ser-
vice of notice or summons upon or appearance of the
receiver of said St. Louis, Hannibal & Keokuk Railroad
Company, obtained judgment in said circuit court,
decreeing and declaring the said right of way forfeited,
and that said judgment was void and of no effect.

That plaintiff was estopped from claiming any
benefit or advantages from said decree so rendered by
the said Lincoln county circuit court, for the reason

that after obtaining said decree and after this defendant had purchased said railroad and all its franchises and right of way, plaintiff acquiesced in and recognized defendant's right to the same and by his conduct waived all claim thereto and by his conduct induced defendant to lay out large sums in maintaining said right of way and constructing fences along the same, and also filed an intervening petition in the United States circuit court for the eastern district of Missouri, in which he admitted defendant's right to said right of way and possession thereof, but sought to recover damages for the same in the sum of $5,000 and have the same declared a lien on defendant's said railroad ; that by the allegations in his said petition and submitting himself to the jurisdiction of said court he waived all advantage he might have obtained by his decree in the Lincoln circuit court ; that said United States circuit court decreed he was not entitled thereto, and said judgment was final.

Plaintiff's reply was a general denial of the new matter in the answer. A jury was waived and cause heard by the court.

This state of facts is developed by the evidence : The right of way belonged to Thomas C. Hutt in 1870, and was a part of his farm of five hundred and fifty-two acres in Lincoln county. On August 18, 1870, T. G. Hutt and wife, by their deed of that date, duly executed and acknowledged and recorded in book Z, page 77, conveyed the right of way, one hundred feet wide, through said farm to the St. Louis & Keokuk Railroad Company, for $100, subject to the following conditions : That said railroad company shall *construct two cattle passes* under their tracks on said premises *at such points as shall be selected by said grantors, to-wit: Thomas G. Hutt*, and shall also build and maintain a good post and board fence on each side of their tracks through all inclosures on said premises within three months after said road shall be completed and trains

run to Troy, Missouri; also make two crossings over said track in the fields. And provided further, that, if said railroad shall not be constructed over and across said premises in ten years from that date, the land should *revert* to the *grantors*.

Under and by virtue of this deed the St. Louis & Keokuk railroad took possession of the right of way, located and graded its road in 1872. Col. Hutt, the grantor, was then living on the farm and continued to reside there until November 23, 1882, when he conveyed the farm to plaintiff. On March 4, 1873, the St. Louis, Hannibal & Keokuk Railroad Company succeeded to all the rights and franchises of the St. Louis & Keokuk railroad, and prior to the year 1881 said road was completed and put in operation from Hannibal to Gilmore. The railroad has been in operation all the time since 1881.

On the twenty-third of November, 1882, Thomas G. Hutt conveyed the farm to plaintiff, McClellan, "*subject to the right of way granted to railroad.*"

Plaintiff, J. M. McClellan, testified in his own behalf, that the right of way contained about twelve acres; was worth $4 or $5 per acre, for rents, and that he was damaged $250 or $300.

Cross-examination: "The railroad was built and in operation when I bought the land in 1882. The fills and cuts were made. No change in roadbed. Rent worth $1 per acre. *The farm is worth more with the railroad through it than it would be without a railroad. The building of the railroad has enhanced the value of the lands.* The railroad was located and graded over the lands in 1872, when Col. Hutt lived on the place. He lived there till he sold it to me in 1882, and knew the railroad was completed and in operation. The road has been in operation all the time since 1881. Told Walker, the superintendent, that if he did not fence the road I would have the deed forfeited. *The company put in three cattle-guards, at my request* After the decree of forfeiture the company, at my

*request, built some fence.* I wrote to Mr. Case, the superintendent, to have the right of way cleaned out. He sent a lot of hands and had it done, It was at my request. I wrote him a letter making the request, and called his attention to the fact that the law required that every railroad should clean off *its right of way. The company built a fence after the decree of forfeiture.* I objected *only* because it was not the kind of fence I wanted. I employed an attorney in St. Louis in 1885, after the decree of forfeiture, to bring suit in the United States court against the railroad company for taking and appropriating the right of way."

Redirect examination : " The company built a five-wire fence part of the way before the decree of forfeiture, at my request. I notified them to clean off the right of way because the statute required it."

Recross examination : "I objected to the fences the company built because they would not turn anything. In my letter to the company I told them that the law required them to clean out the right of way."

G. L. Thurmond testified : "Am acquainted with the land where the railroad runs through McClellan's farm ; the rental value of the twelve acres would be fifty cents or $1 per acre."

Cross-examination : " Lived near the land when railroad was put in operation. No change has been made. It has all been fenced for three years or more."

About March 1, 1883, the plaintiff, McClellan, commenced an action in the circuit court of Lincoln county, Missouri, against the St. Louis, Hannibal & Keokuk Railroad Company to forfeit and declare null the deed from Hutt to the company for the right of way, *for failure* to build the fences and make the passes mentioned in the deed. The papers in the case are lost. The record entries are somewhat confusing. In one, it is denominated an action for "damages," and in another, "injunction ;" however, Mr. Dunn, who was the attorney, says there was only one case, and that was for "specific

performance," or to declare a forfeiture. R. H. Norton, Esq., appeared for defendant, and filed a demurrer ; at the spring term, 1884, it appears that Mr. Norton withdrew as counsel for the railroad and the cause was from that time entirely undefended. On April 2, 1884, the circuit court of Lincoln county made a conditional decree, reciting .Hutt's deed to the railroad, and the condition in it that said company should construct two cattle passes under its track *at such points as should be selected by Hutt*, and should maintain *the* fences, and ordered that the railroad proceed in sixty days to construct two cattle passes *at such points as plaintiff might* select, etc., and, in default, the whole right of way would be declared *forfeited and the deed null and void.* At the fall term, 1884, these passes not having been constructed, the decree was made final, forfeiting the right of way.

In the meantime, and while the suit was pending in the circuit court of Lincoln county, D. C. Blair, as trustee for certain bondholders, in a mortgage executed by said railroad company, commenced a suit in equity in the United States circuit court for the eastern district of Missouri, and, on his application, *on February 7, 1884*, one Edwin C. Case was duly appointed receiver of said railroad, qualified and took charge of all its property. It seems that this receiver never employed Mr. Norton to take any further steps in the Lincoln court. This receiver remained in charge of the railroad until March 30, 1886. It does not appear that the receiver had any notice that the suit of plaintiff for the forfeiture was pending in Lincoln. Nor was the order commanding the company to build the fences and passes in sixty days served on him.

After the decree of forfeiture in the Lincoln circuit court, on June 5, 1885, plaintiff filed his *intervening* petition in the United States circuit court, in the foreclosure proceeding of D. C. Blair against the railroad company, in which he recites his title and the

McClellan v. The St. Louis & H. Ry. Co.

forfeiture and then, proceeding, makes this allegation : " Your petitioner further avers that *he has a lien upon said strip of land constituting the right of way* of said St. Louis, Hannibal & Keokuk Railroad Company, paramount and superior to the rights of complaint of all persons claiming by, or through, or under, said St. Louis, Hannibal & Keokuk Railroad Company ; that, by reason of the *construction* and *location* of said road through its premises *and the appropriation* of said right of way by said St. Louis, Hannibal & Keokuk Railroad Company, *your petitioner is damaged in the sum of $5,000 ;* wherefore he prays judgment for said amount, and that the same may be *declared a first lien upon said strip of land* and the property of said railroad company *with prior rights to the mortgages sued on,* and for such other relief as may seem meet and just."

According to the practice in the federal court in equity, this intervening petition was referred to B. Gratz Brown, a special master, together with the demurrer of the complainant thereto. This demurrer was sustained by the special master, and his ruling afterwards, on June 25, 1885, was confirmed by the United States circuit court, and plaintiff's intervening petition dismissed.

The defendant below offered in evidence the report of the master, and the order of the court above referred to ; but, upon objection, the court excluded said records, to which defendant duly objected and excepted.

Under a decree of the United States circuit court in the foreclosure proceedings, the St. Louis, Hannibal & Keokuk Railroad Company, its property, franchises, etc., were sold and conveyed by master's deed, in December, 1885, to John I. Blair. John I. Blair, in February, 1886, conveyed the road to the defendant in this case, the St. Louis & Hannibal Railway Company.

At the conclusion of the evidence the court declared the law as follows : "The court, sitting as a jury, is

instructed to find a verdict for the plaintiff in this cause." To the giving of which the defendant duly excepted.

The following instructions were asked by the defendant and refused by the court: "1. The court, sitting as a jury, is instructed that, under the pleadings and the evidence in this cause, the verdict will be for the defendant.

"2. The court is instructed that the St. Louis, Hannibal & Keokuk Railroad Company acquired all the right, title, property and franchise of the St. Louis & Keokuk Railroad Company, and that all the right, title, property and franchises of the St. Louis, Hannibal & Keokuk Railroad Company were transferred and passed to John I. Blair by the deeds read in evidence, and that the deed read in evidence from John I. Blair to the St. Louis & Hannibal Railroad Company conveyed to said last-named railway company all the right, title, property and franchises of the said John I. Blair.

"3. Although the court may believe that the deed made by Thomas G. Hutt to the St. Louis & Keokuk Railroad Company was declared forfeited by the circuit court of Lincoln county, Missouri, yet, if you further find that, at the time the said decree or judgment of forfeiture was rendered by said circuit court, the St. Louis, Hannibal & Keokuk Railroad Company had been, and was then, under the control, care and possession of Edwin C. Case, as such receiver, and was not made a party to such suit, and did not enter his appearance therein as defendant, then the verdict will be for the defendant.

"4. Although the court may believe, from the evidence, that the deed made by Thomas G. Hutt and wife to the St. Louis & Keokuk Railroad Company was declared forfeited by the decree or judgment of the circuit court of Lincoln county, Missouri; yet, if you further find that, after the rendition of said decree or judgment, the plaintiff acquiesced in, or consented to,

the use and occupation of the land sued for, as the right of way of the St. Louis, Hannibal & Keokuk Railroad Company, or the St. Louis & Hannibal Railroad Company, then the plaintiff cannot recover in this action and the verdict will be for the defendant.

"5. And the court is further instructed that, if the plaintiff, after the rendition of said decree or judgment, notified and required the defendant to clean off and remove from said strip of land the vegetation and undergrowth thereon, and the said defendant, in pursuance of said notice, did clean off and remove such vegetation and undergrowth, then such act of the plaintiff must be construed to be an acquiescence and consent to the use and occupation of said strip of land as a right of way for defendant's railroad.

"6. If the court believes, from the evidence, that the plaintiff, after the decree of forfeiture, presented his intervening petition to the United States court in the case of D. C. Blair, trustee, v. the St. Louis, Hannibal & Keokuk Railroad Company for damages for the taking and appropriating the said strip of land for the right of way of the said railroad, then such act, upon the plaintiff's part, was a waiver of his right to the possession of said lands, and the verdict will be for the defendant.

"7. Although the court may believe, from the evidence, that the conditions mentioned and set out in the deed from Thomas G. Hutt to the St. Louis & Keokuk Railroad Company were not complied with, and the decree of the circuit court of Lincoln county, Missouri, declared said deed forfeited for failure to fulfill and perform the conditions, yet such failure did not, and does not, give the plaintiff any right to said lands as against the St. Louis & Keokuk Railroad Company and its assigns.

"8. If the court find, from the evidence, that Thomas G. Hutt, the plaintiff's grantor, consented to the occupation of the lands in controversy by the said

St. Louis & Keokuk Railroad Company and its assigns, for the purpose of constructing, building and operating a railroad thereon, upon conditions expressed in the deed of said Thomas G. Hutt to said railroad company, even though the court should find that the said railroad company and its assigns did not comply with such conditions, the verdict will be for the defendant.

"9.  If the court believes, from the evidence in this case, that the defendant, and those under whom it claims, have been in open, notorious and adverse possession of the lands herein sued for, claiming to own the same for a period of ten years, or more next before the commencement of this suit by plaintiff, the verdict will be for the defendant.

"10.  If the court believe, from the evidence, that the plaintiff bought the land on which the railroad was constructed and operated, subject to the right of way previously granted by Thomas G. Hutt and wife to the defendant railway company, or those under whom it claims, and that said defendant railway company, or those under whom it claims, entered and took possession of and occupied said right of way, by and with the consent of Thomas G. Hutt and wife, then the verdict must be for the defendant.

"11.  If the court find, from the evidence, that the St. Louis & Keokuk Railroad Company took possession of said strip of land in 1872 or 1873, under the deed read in evidence from Thomas G. Hutt and wife, and excavated and graded said strip of land and put the same in condition for receiving ties, rails, etc., and the defendant was in possession of said lands at the commencement of this suit, then the presumption is that the St. Louis & Keokuk Railroad Company and its assigns have remained in possession of said lands from the first entry thereof until the commencement of this suit.

"12.  The court instructs that the decree of the circuit court of Lincoln county, Missouri, declaring the

deed made by Thomas G. Hutt to the St. Louis & Keokuk Railroad Company forfeited for conditions broken, did not give the plaintiff any better right to sue for the possession of said lands than he had before the rendition of said decree.

"13. The court instructs that, although it may believe, from the evidence, that the conditions in the deed from Thomas G. Hutt and wife to the St. Louis & Keokuk Railroad Company were broken, yet, if they (it) further find that said plaintiff is a purchaser of said lands from said Hutt, then the said plaintiff cannot take advantage of said broken conditions, and the verdict will be for the defendant."

Judgment for plaintiff for possession, rents and profits.

Defendant's motion for new trial, which was overruled, assigned the following reasons:

*First.* Because the judgment is against the evidence. *Second.* Because the verdict is against the law of the case. *Third.* Because the court erred in giving instructions for plaintiff. *Fourth.* Because the court erred in refusing to give instructions asked by defendant. *Fifth.* Because the court admitted illegal and improper evidence offered by plaintiff. *Sixth.* Because the court refused to admit proper and legal evidence offered by defendant. *Seventh.* Because the judgment should have been for the defendant instead of for the plaintiff.

*J. H. Orr* and *Martin & Avery* for appellant.

(1) The record of the deeds from Thomas G. Hutt and wife to St. Louis & Keokuk Railroad Company, and from Hutt to plaintiff, was not the best evidence. The loss of the originals was not proved nor any effort made to produce them. The interlocutory and final judgment in the forfeiture suit of plaintiff against the St. Louis, Hannibal & Keokuk Railroad Company should not have been admitted. The objections thereto should

have been sustained.	The circuit court had no jurisdiction to proceed in the cause after the receiver had been appointed by the federal court.	High on Receivers, secs. 48, 50; *McCulloch v. Norwood*, 58 N. Y. 562.	(2) The instructions asked by defendant should have been given. It was the duty of the court to declare the legal effect of defendant's deeds, as asked in the second instruction. *Hunt v. Railroad*, 75 Mo. 252.	(3) The fourth, fifth, sixth, seventh and eighth instructions should have been given.	If the plaintiff acquiesced in or consented to the use and occupation of the land for a right of way (as asked in the fourth instruction), or required the railroad company to remove the undergrowth (as asked in the fifth instruction), or presented his intervening petition for damages for such use and occupation (as asked in the sixth instruction), or if Thomas G. Hutt consented to the occupation of said lands (as asked in the eighth instruction), ejectment will not lie.	*Provolt v. Railroad*, 57 Mo. 256; *Hubbard v. Railroad*, 63 Mo. 68; *Kanaga v. Railroad*, 76 Mo. 207; *Gray v. Railroad*, 81 Mo. 124, 134; *Baker v. Railroad*, 57 Mo. 265. When the owner of lands does not insist upon the prepayment or other consideration for right of way, but, by acquiescence or license, *induces or permits* the company to take possession and construct the road, he cannot maintain ejectment thereafter for the lands.	*Bradley v. Railroad*, 91 Mo. 493; *Beck v. Railroad*, 21 N. E. Rep. 471.	The evidence shows that the strip of land sued for had been in the possession of the defendant, and those under whom it claims, since 1872, more than ten years before the commencement of this suit, and the plaintiff's claim or title, if any, was barred by the statute of limitations, as asked in the ninth and tenth instructions.	*Key v. Jennings*, 66 Mo. 353; *Bradley v. Railroad*, 91 Mo. 493; 100 Mo. 210.	And the continuance of the possession shown in the St. Louis & Keokuk railroad will be presumed as asked in the eleventh instruction.	Lawson on Presumptive Evidence, 163.	Only the

grantor or his heirs are entitled to declare a forfeiture for conditions broken. The plaintiff in the forfeiture suit was neither, and it should have been so declared as asked in instruction, numbered 13. Pierce on Railroads, 136; *Knight v. Railroad*, 70 Mo. 231. (4) If we concede that the decree of the circuit court in the forfeiture suit of the plaintiff had the effect to nullify and make of no effect the deed from Hutt to the St. Louis & Keokuk Railroad Company, still such effect could only be given to it from the date of the decree It did not make it void *ab initio*. *Hubbard v. Railroad*, 63 Mo. 68. (5) The plaintiff lived upon the land from 1882 to the fall of 1887 before commencing this suit. He knew the road was being operated all that time; had the company build fences, cattle-guards, etc., and clear out the right of way of undergrowth, etc.; filed his intervening petition in the United States circuit court for damages, etc. Under such circumstances ejectment cannot be maintained for the roadbed. *Kanaga v. Railroad*, 76 Mo. 207–213.

*Norton & Dunn* for respondent.

(1) The testimony of J. M. McClellan sufficiently accounts for the loss of the original deed from Thomas G. Hutt and wife to the St. Louis & Keokuk Railroad Company and from the former to McClellan to authorize the introduction in evidence of the record of said deeds. (2) The interlocutory and final judgment in the forfeiture suit was properly admitted. The circuit court of Lincoln county, Missouri, acquired jurisdiction of the parties and the subject-matter of the suit, and its decree declaring a forfeiture, having not been appealed from, was final and cannot be attacked in a collateral proceeding. When the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached that right cannot be arrested and taken away by proceedings in any other court. *Seibel v. Simeon*, 62 Mo. 255; *Hardin v. Lee*, 51 Mo. 241; *Ellis v. Jones*, 51 Mo.

180; *Hill v. Taylor*, 3 Mo. App. 351. (3) The statute of limitations constitutes no defense in this case. The grantor had a right to presume that the railroad company would comply with the conditions in the convey-ance of right of way as soon as the railroad was built and cars running to Troy, Missouri, and that event did not happen until the year 1881, and not until after that time could any suit for forfeiture or damages be brought against the railroad company for failure to comply with the conditions in the grant of right of way, hence the statute would not commence to run until that time. *Rice v. Railroad*, 55 Mo. 146. (4) The facts in this case do not make out an estoppel. (5) Ejectment is the proper remedy. Where a company proceed to build their road upon land to which they have not acquired the necessary title, either by condemnation under the statute, or by conveyance from the owner, or by some permission that gave them authority, they will be liable to be ousted by ejectment. *Walker v. Railroad*, 57 Mo. 275; *Bradley v. Railroad*, 91 Mo. 493; *Armstrong v. St. Louis*, 68 Mo. 309.

GANTT, P. J.—This is an action of ejectment to obtain possession of a strip of land, one hundred feet in width, through plaintiff's farm in Lincoln county, Mis-souri.

The defendant and its predecessor, the St. Louis & Keokuk Railroad Company, have occupied this strip since 1872, as a part of the right of way for said rail-road, a line running from Gilmore, on the Wabash, St. Louis & Pacific railway, to Hannibal.

Thomas G. Hutt was the owner of this farm in 1870, and on the eighth of August of that year conveyed this right of way through his farm to the St. Louis & Keokuk railroad for $100, "subject to the following conditions, viz.: That the said railroad company shall construct two cattle passes under their track and said premises at such points as shall be selected by said

grantor, to-wit, the said Thomas G. Hutt, and shall also build and maintain a good post and board fence on each side of their track through all inclosures on said premises within three months after said road shall be completed and trains run to Troy, Missouri; also to make two crossings over said track in the fields."

Under this deed the railroad company took possession and constructed its railroad, sometime in 1872. The whole line was completed in 1880 or 1881. Hutt lived on the farm all the time the road was being constructed. There is no evidence that he ever selected any points where the company should make the two underground passes, nor that he ever complained of the failure to build the fences on either side of the railroad. In November, 1882, Hutt conveyed the farm to plaintiff by deed, which provides that the grant therein is "*subject to the right of way granted the railroad.*" So that, in this case, the railroad company took possession and constructed its road by virtue of a deed. It was not a trespasser in the first instance.

Plaintiff now seeks to eject the present company as the successor to the company that obtained the right of way in 1870, for the *breach* of the *conditions subsequent* in Hutt's deed, and, as a preliminary step, the record discloses that in 1883 he commenced an action in the circuit court of Lincoln county to have Hutt's deed forfeited, and although the decree was obtained in defiance of all equitable or legal considerations, so far as the record discloses, as that court had jurisdiction of the parties and the subject-matter, its judgment is binding in this collateral proceeding.

The circuit court having declared Hutt's deed void for the failure of the company to build underground passes, and no appeal having been taken from that decree, we must consider the case as if no deed had ever been executed by Hutt and wife to the railroad. The decree does not extend further than to declare the deed null.

Leaving the deed out of view then, what were the rights of the parties when this action commenced? It will hardly be questioned that, until the decree of the Lincoln court was entered in the fall of 1884, the railroad company was lawfully in the possession of the land by virtue of the deed; the decree itself only undertook to operate prospectively on the title to the right of way. Under a valid power then, defendant's predecessor had entered and constructed a railroad. This piece of land was a section of a through line. The company by its charter had acquired a line, connecting it with the Wabash system on one side and the important lines centering at Hannibal on the other. Expensive and permanent improvements had been made, all with the knowledge, assent and acquiescence of Col. Hutt, the grantor in said deed.

By the terms of that deed, Hutt alone was authorized to select the places where these underground passes should be made; this he had never done. That Hutt could not have maintained ejectment with or without a decree setting aside this deed, we think is clear. *Baker v. Railroad,* 57 Mo. 265; *Bradley v. Railroad,* 91 Mo. 493; *Provolt v. Railroad,* 57 Mo. 256. Is the condition of the plaintiff any better? According to his testimony, he had lived in the immediate neighborhood over twenty-five years; knew the railroad was graded in 1872; knew that the railroad was located and operated through this land when he bought; saw the first shovelful of dirt ever thrown on it; was himself agent on the railroad bonds. Took a deed from Hutt *subject to this right of way.*

After obtaining his decree in the Lincoln circuit court, he voluntarily submitted himself, and his right to damages for the *appropriation of this identical right of way,* to the United States circuit court for the eastern district of Missouri, and asked judgment for $5,000 damages, and that the judgment might be declared a lien on this particular strip. That court decided

against him.  He did not appeal from that decision. The defendant in this case is a purchaser from John I. Blair, who bought this road under the foreclosure proceedings, in which plaintiff was an intervenor.  After all this plaintiff requests the defendant to build fences *to separate this strip from his farm.*  He requests the company to build cattle-guards and it does it.  He notifies its officers to clean off "*its right of way,*" and it does it.  All this after his forfeiture of the deed.  He testifies that his farm is worth more with the railroad through it than it would be without a railroad ; that the road had enhanced the value of his lands. .

The law will not permit a railroad company to appropriate a citizen's lands without just compensation, and our constitution provided every safeguard to protect him against wrong and oppression, and he can insist on the condition precedent that the damages shall be paid him, or into court for him, before he relinquishes his right; but it is equally well established that a landowner cannot, by his deed or acquiescence or. license induce a railroad to build its road, make permanent and costly improvements upon the strength of his conduct, and, then, for the breach of some condition subsequent, such as the erection of fences, constructing cattle-guards or making, as in this case, an underground passway, maintain ejectment.  *Baker v. Railroad, supra ; Provolt v. Railroad, supra ; Hubbard v. Railroad,* 63 Mo. 68 ; *Masterson v. Railroad,* 72 Mo. 342.

These railroads are highways, they are permitted to exercise eminent domain, because of their *quasi* public character.  Without this, under our system of government, there could be no justification of permitting them to condemn their right of way through the citizen's lands ; and, having been created for this public purpose, the public acquires an interest to the extent that the public convenience requires they be maintained without unnecessary hindrance.  *Walther v. Warner,* 25 Mo. 277.

"In these great public works, the shortest period of clear acquiescence so as to fairly lead the company to infer that the party intends to waive his claim for present payment, will be held to conclude the right to assert the claim in any such form, as to delay the company in the progress of their works, and especially to stop the running of the road after it has been put in operation, whereby the public acquire an important interest in its continuance." *Provolt v. Railroad, supra.*

Here, after standing by for many years and knowing that the company had built this road and was maintaining it, the plaintiff bought this land. Notwithstanding plaintiff has managed to obtain an improvident decree, setting aside defendant's deed, he must still recover, if at all, in this case *on his own deed* from Hutt, and it is questionable whether he has increased his own estate by attacking defendant's title. Clearly Hutt would have been estopped, and plaintiff claiming under Hutt, with full notice, is in no better condition. His acquiescence is pronounced recognition of defendant's right of way in solemn pleadings; his various written notices to the company; his delay of years even after forfeiture; his procurement of the building of a fence that would unmistakably segregate this right of way from the remainder of his farm and place it in the exclusive possession of defendant, are all such clear recognitions of defendant's title, that the bare statement of the case carries its own convictions. *Gray v. Railroad*, 81 Mo. 126; *Cory v. Railroad*, 100 Mo. 282.

The court should have given defendant's first instruction, and committed error in giving plaintiff's instruction. For this error the judgment of the circuit court is reversed.