# MAUPIN, Appellant, v. CHICAGO, ROCK ISLAND and PACIFIC RAILWAY COMPANY.

### Division One, December 24, 1902.

1. **Statute of Frauds:** PERFORMANCE: GRANT: EASEMENT.    Where a contract which the statute of frauds requires to be proven by writing has been clearly shown by oral testimony to have been made and to have been fully performed, the performance takes it out of the operation of the statute.

2. **Ejectment:** AGAINST RAILROAD: CONSTRUCTING SWITCH.   The separate owners of four lots, desiring to use them for wholesale houses, solicited the defendant railroad to put in a switch along the alley in the rear of the lots.   The company declined to do so unless the owners would give a ten-foot right of way off of the ends of the lot for switch purposes, and to this all the owners consented, and thereupon the city council granted the privilege to the company to put in the switch on condition that it would pave the alley.   Thus the switch was constructed over the ten feet in suit.   *Held,* that the permission given the railroad company to enter on the ten-foot strip, was not a mere license revocable at the will of the owner, but an agreement between the owners of the four lots and the company, granting to the company a permanent right of way over the strip for the switch track and its uses, and having been performed it vests an easement in the company for such purposes.

3. ———: ———: AGREEMENT FOR CONSTRUCTING SWITCH: CONSIDERATION.   The consideration for said agreement was the advantage that the owner of the lot judged would attach to his property by a railroad switch at the back door of his wholesale house, where a car could be conveniently loaded or unloaded, and where like facilities would attach to the property of the other three adjoining lot owners, thus increasing the commercial utility and the consequent value of the property in the immediate vicinity, all of which in contemplation of law is a valuable consideration.

4. ———: ———: ———: COMMUNITY OF INTERESTS.   Such a contract was not one between the company and the owner of the individual lot, but between it and the owners of all four lots, since the company did not incur the expense of the switch and paving in the expectation of handling the freight from one lot alone, and the property owners on their part depended on each other to agree upon the terms for constructing the switch, without which unanimous

agreement it would not have been built, and thus the promise of all became the consideration for the promise of each.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson*, Judge.

AFFIRMED.

*Crow & Eastin* for appellant.

(1) The permission given by Maupin was a license revocable at his pleasure. Pitzman v. Boyce, 111 Mo. 387; Kremer v. Railroad, 51 Minn. 15; 3 Ballard's Annual on the Law of Real Property, sec. 237; Halloway v. Railroad, 92 Ky. 244; United States v. Lee, 106 U. S. 196.    (2)    The decisions in this State commencing with Provolt v. Railroad, 57 Mo. 256, holding that ejectment will not lie against a railroad company where it enters upon land with the consent of the owner, either express or implied, do not control under the facts in this case: (a) The right was given to a neighboring property-owner for his private use and convenience. (b) No extended line of railroad exists, and no heavy expense has been incurred. The track is less than two hundred feet long and cost $1.28 per lineal foot. (c) It was not designed for public use. If the public is to be considered, the alley switch meets its demands. Pitzman v. Boyce, 111 Mo. 387; Glassner v. Brewing Ass'n, 100 Mo. 508. (3) Private property can not be taken for public use without just compensation. Constitution, art. 2, sec. 21. (4) Ejectment is appellant's only remedy. If this action is denied him he is without remedy and the Constitution is disobeyed.

*Brown & Dolman* for respondent.

(1) The doctrine of estoppel is a valid defense as against plaintiff's action of ejectment. "Where such defense is available at all it is as valid against an action of ejectment as though the party making it had

by process of condemnation acquired a complete title to the land in controversy.'' ·Scarritt v. Railroad, 148 Mo. 682; Alexander v. Railroad, 138 Mo. 464; Scarritt v. Railroad, 127 Mo. 298; Dodd v. Railroad, 108 Mo. 581; McClelland v. Railroad, 103 Mo. 295; Kanaga v. Railroad, 76 Mo. 207; Provolt v. Railroad, 69 Mo. 633; Provolt v. Railroad, 57 Mo. 256.   This switch is a part of the system of tracks owned by defendant.   Private persons occupying the adjoining property have no control or management, either of the switch, the cars or the business of transportation.   The defendant is a common carrier, and bound to receive for transportation goods tendered to it by any person at any place on the switch where it receives consignments from others. Brown v. Railroad, 137 Mo. 537.   And the public having, at great expense, made arrangements to deliver freight at this point are entitled through the company to the benefit of the estoppel.   Dodd v. Railroad, 108 Mo. 586; Alexander v. Railroad, 138 Mo. 474.   (2) The improvements costing about $4,000 were made by defendant, not only with the knowledge of plaintiff, but were induced by his agreement to give the land permanently as a right of way.   It is in possession and using the right of way under a parol contract fully executed on both sides for such permanent right of way, and is binding upon the plaintiff, as against a plea of the statute of frauds.   Its execution takes it out of the operation of the statute.   Sheridan v. Nation, 159 Mo. 27; Green v. Ditsch, 143 Mo. 1; Bliss v. Jenkins, 129 Mo. 647; Hall v. Harris, 145 Mo. 614; Alexander v. Alexander, 150 Mo. 579; Winters v. Cherry, 78 Mo. 344; Briggs v. Munchon, 78 Mo. 461; Dozier v. Matson, 94 Mo. 328; Hubbard v. Hubbard, 140 Mo. 388.

VALLIANT, J.—Plaintiff sues in ejectment for a strip of land in the city of St. Joseph, measuring twelve by forty feet, shown on the following diagram:

Defendant has a railroad track, as shown on the diagram, in the alley through blocks 54 and 55, and a switch or spur leading from the track at a point in Angelique street through lots 1, 2, 3, and 4 of block 54. The strip sued for is that covered by the switch track, as shown on the diagram in the rear of lot 3.

The answer of defendant first denies all of the allegations of the petition, and then pleads: that in October, 1889, the respective owners of lots 1, 2, 3, and 4, of whom was plaintiff as owner of lot 3, solicited defendant to construct its track through the alley, which defendant agreed to do, provided it was permitted permanently to occupy a right of way of ten feet across the rear of the lots named for a switch track for loading and unloading purposes pertaining to those lots, to which the owners of the lots, plaintiff included, agreed, and thereupon they and others owning lots in that block petitioned the common council of the city and obtained permission by ordinance for defendant to lay its track through the alley on condition that the defendant should pave the alley; that relying on that agreement defendant paved the alley as required, and constructed its track through the same and a switch track along the rear ten feet of the lots mentioned, all of which was done at great expense to defendant, and completed February 25, 1890, and defendant has ever since maintained the same as a permanent part of its railway; that upon the construction of the track on those lots the owners of lots 1, 2, and 4 constructed large and valuable buildings designed for handling heavy goods to be loaded and unloaded at such houses through the facilities furnished by that track; that the construction and maintenance of the track greatly increased the value of the lots and its removal would impair the same; that ever since February 25, 1890, defendant has maintained its track on the rear of plaintiff's lot, claiming the right to so maintain it as a part of its permanent railway, and that plaintiff's cause of action has not accrued within ten years.

Plaintiff demurred to all the answer except the general denial, and the court overruled the demurrer.

The cause was tried by the court without a jury. The evidence for the plaintiff tended to show that he owned the fee to lot 3 and was in possession of all of it except the strip of ten feet in question, which was in possession of defendant and occupied by its switch track; that no representative of the defendant conferred with him about putting in the switch, the only persons who talked to him on the subject were Mr. Donovan and Mr. Podvant; that he had notified defendant to move its track before this suit was begun.

On cross-examination of the plaintiff he testified that Donovan and Podvant, one owning the adjoining lot on the north, the other on the south, asked him to agree to let the railroad occupy this strip; he at first refused, but afterward agreed to it; then he signed the petition to the common council, asking for the passage of the ordinance allowing the defendant to lay its track through the alley, and after the defendant had constructed its tracks through the alley and along this strip in the rear of their lots, plaintiff, Donovan and Podvant erected buildings on their lots respectively, conforming them to the situation made by the railroad tracks. Before that time plaintiff's building had covered his whole lot from street to alley, 40 feet wide and 140 feet long, but after the railroad came plaintiff tore down his old building and erected a new one 130 feet long, joining with Donovan on the north and Podvant on the south in party walls, each 130 feet from street to the strip occupied by the railroad. Donovan, Podvant, and the man north of Donovan erected on their lots buildings conformed to the switch, and designed for carload freight business, and had each ever since been conducting a considerable business by carloads by means of that switch.

The testimony on the part of defendant tended to show as follows: Donovan was the promoter of the project. He conceived the idea that it would be to the advantage of the owners of property in that block to

have the defendant run a track through the alley, and he discussed the matter with his neighbors, among them the plaintiff, who came to his views. He then went to Mr. Brown, representing the railroad company, and made the request that the company build such switch. Mr. Brown at first objected to the scheme, upon the ground that it was at least doubtful if such use could be made of the alley as would be required for the loading and unloading of cars for the purposes of the owners of the buildings abutting the alley, without which there would be no profit to the railroad company, but he would favor the scheme if the owners of lots 1, 2, 3, and 4 would give the right of way of ten feet wide in the rear for a spur track. This proposal Donovan carried back to Podvant and the plaintiff; the matter was discussed by the three, and they agreed to it. In the discussion the question was asked what effect would it have on the title to the lots and it was answered that the owners would retain their titles, and the railroad company would have an easement and so they all understood it, "that the property was ours with a right of way to them for that purpose, and it was on that agreement that we all let the track go there." When that understanding was reached, the petition to the common council was circulated for signatures of the property-owners. This was signed by the plaintiff, together with all the others in the block. Some of the property-owners on the other side of the alley made a condition that the railroad company should be required to pave the alley and that was agreed to. The ordinance was passed, the tracks were constructed and put into operation, and the alley was paved. The total cost to the defendant was about $4,000, the cost of the particular spur in question was $1.28 per linear foot. Mr. Brown, who was a witness for defendant, had the impression that a written permission signed by the owners of the lots for a permanent use of this ten-foot strip by the railroad company had been executed, but when this suit arose he had caused search to be made and such writing

could not be found, therefore he was unwilling to testify that it had been executed.

The plaintiff asked the following instruction, which the court refused:

"The court, sitting as a jury, declares the law to be as follows: If in the fall of 1889 plaintiff, being the owner of lot 3, block 54, original town, now city of St. Joseph, Missouri, consented orally that defendant company might construct a switch or open spur of its railroad on and across the east twelve feet of said lot for its own use and for the especial use and benefit of a few property-owners or their tenants in said block fifty-four, and that said spur or switch was not used nor intended to be used for any other purpose, and if the plaintiff is, and ever since said date has been the owner of said lot and the part thereof described in plaintiff's petition, then plaintiff had the right, at any time thereafter to require defendant to remove said spur or switch and surrender to him the possession of the parcel of ground sued for, and the finding and judgment should be for the plaintiff."

At the request of defendant the court gave the following:

"The court declares the law to be that if, on or about October, 1889, John Donovan, Jr., requested the defendant to extend its railroad track from Messanie street to Sylvanie street along the alley running north and south through the middle of blocks 54 and 55 of the original town of St. Joseph, and was informed by the agent of defendant in the matter that it would do so, provided he and other property-owners in said two blocks would secure for it the right of way over ten feet off of the east end of lots 1, 2, 3 and 4 in said block for the laying of a track for service purposes and would secure the consent of the city to the laying of the track along said alley, and the plaintiff thereupon expressed to said Donovan his consent to give said right of way over the land described in the petition, of which consent said Donovan notified defendant's agent, and the property-owners in said block secured the passage and

approval of the ordinance in evidence, and defendant thereupon, relying on said consent, constructed the track along said alley and across said ten feet of ground without objection on the part of plaintiff, and paved said alley with cedar blocks, all at a cost of about $4,000, and has since maintained said track and used the same until the bringing of this suit, and the said lots 1, 2, 3 and 4 have since been improved with reference to the situation and use of said track, then the plaintiff can not recover in this case and the finding and judgment must be for defendant.''

The court found the issues for the defendant and rendered judgment accordingly, from which the plaintiff appeals.

Appellant's theory of this case is that the permission given to the railroad company to enter on the plaintiff's lot and lay its track was a mere license revocable at will, and that the law of the case is the same as that declared in Pitzman v. Boyce, 111 Mo. 387. In that case the land-owner had permitted a neighbor for his own convenience to build a sewer across and under the surface of her land, in the doing of which he had expended a considerable sum of money; he had continued to use the sewer for nineteen years when the land-owner, being then about to sever the sewer connections, plaintiff brought suit in equity to enjoin her. The plaintiff's contention there was that he had acquired an easement by adverse use, or if not that then the land-owner was estopped to deny his right, since she had knowingly permitted him to incur the expense in the expectation of a continuing use of the sewer. The court held that there could be no adverse user of a privilege begun and continued under permission, and that the mere fact that the plaintiff had of his own free will expended the money for the sewer in the expectation of making his own use of it, did not create an estoppel. In that case there was no agreement, parol or otherwise, with the owner of the land under which the sewer was constructed, and no consideration to the land-owner; it was a mere gratuitous license, which the court held to

be revocable at the will of the licensor. The principles
of law there announced do not satisfy the facts of the
case at bar. Nor is this case controlled by the princi-
ple laid down in Provolt v. Railroad, 57 Mo. 256, and
the subsequent cases that have followed it, cited in the
brief for respondent: Kanaga v. Railroad, 76 Mo. 207;
McClelland v. Railroad, 103 Mo. 295; Dodd v. Railroad,
108 Mo. 581; Scarritt v. Railroad, 127 Mo. 298; Alex-
ander v. Railroad, 138 Mo. 464; Scarritt v. Railroad,
148 Mo. 676. The principle running through those
cases is that ejectment will not lie to take a cut out of a
railroad when the company has entered on the land
with the consent of the owner who by his acquiescence
induces the company to build its road across his land,
he not insisting on his right to be first paid, but signify-
ing his willingness for the construction to proceed and
looking to the company for payment in the future. That
is not this case. The learned counsel for appellant ar-
gue to prove that if the plaintiff has not the remedy
by action of ejectment, he is without remedy. That
may be, but to what is he entitled? Unlike the plain-
tiffs in the cases just cited, he did not surrender his
land to the railroad company with the understanding
that the company was to pay him for it. Whatever
the consideration was that moved him, he has received.
What was the consideration? It was the advantage
that he judged would attach to his property by having
a railroad switch at his back door, where a car could
be loaded or unloaded, and where like facilities would
attach to the property of his neighbors adjoining north
and south, increasing the commercial utility and the
consequent value of the property in the immediate vicin-
ity of his lot. That may or may not in fact have re-
sulted to his advantage, but that is immaterial as affect-
ing the question before us; it seemed a good scheme
to him and his neighbors at the time, it was the consider-
ation that moved them, it was in contemplation of law
a valuable consideration, and if it has failed in its re-
sults it is not the fault of the defendant company which
has performed its part of the contract.

This was something more than a contract between the plaintiff and the defendant, and more interests than theirs are involved. It was a contract between the plaintiff and the other property-owners in the vicinity on the one part, and the railroad company on the other. The railroad company did not incur this expense in the expectation of handling the freight from one of these lots only, but it was for the traffic that was anticipated from all the lots. And the property-owners among themselves depended one upon the other and each upon all for the accomplishment of their expectations, and thus the promise of one became the consideration for the promise of the other and that of all for each, and every one has performed his part. Acting on this agreement the other property-owners in the block have constructed their houses to use the facilities afforded by this track, and have built up their businesses by that use. That of course is only a collateral fact in this case, since those parties are not litigants here, but it is a strong circumstance to corroborate the testimony of defendant's witnesses who say that there was a distinct understanding and agreement that the railroad company should have a permanent right of way over this strip. And besides, the business that the railroad company was to handle for all these parties was the consideration that moved it in the transaction. If now the plaintiff can cut this piece out of the track the defendant's business with the houses north of the plaintiff is destroyed.

To all this the plaintiff answers, easement lies only in grant, and the grant, under the statute of frauds, can be proven only by writing. That is correct, but when a contract which the law requires to be proven by writing has been clearly shown by oral testimony to have been made and to have been fully performed, the execution takes it out of the operation of the statute of frauds. The cases cited in the brief of counsel for respondent on this point fully support the proposition. We hold this to have been an agreement between the owners of lots 1, 2, 3 and 4 on the one part and the railroad company

on the other part granting to the railroad company a permanent right of way over this ten foot strip, for the switch track and its uses, that the contract has been performed by the parties on both sides and although there is no deed conveying the easement, yet it vests in the railroad company for the purposes hereinabove specified. This is an equitable defense pleaded and proven by defendant and bars the plaintiff's action.

As what we have already said disposes of the case, we deem it unnecessary to consider the other points discussed in the able briefs. The judgment is affirmed. All concur.