————o————

JOHN W. EVANS, Respondent, vs. THE MISSOURI, IOWA AND NEBRASKA RAILWAY CO., Appellant.

1. *Charter of M., I. & N. R. R.—Railroads—Condemnation of land—Acquiescence in, by owner, what acts not equivalent to—Subsequent restraining order.* —The charter of the Mo., Iowa. & Nebr. R. R. (Sess. Acts 1851, §§ 7, 9, 10, 483 ; Sess. Acts 1857, § 10,) provided that on tender or deposit of the amount found by the commissioners due the land owner on condemnation of his land

for railroad purposes, the company might go on and complete the road. A land owner having excepted to the report of the commissioners, under such proceeding, it was held that he having exhausted his statutory remedies his failure to ask for an injunction or the appointment of a receiver or other equitable intervention, while the road was being constructed over his land, was not tantamount to an acquiescence in its construction, but that after its construction, the road being insolvent, he was entitled, on proper steps taken, to payment of the amount awarded, or in default thereof to an order restraining the company from operating its road over his property.

*Appeal from Schuyler County Circuit Court.*

F. B. *Hughes & A. J. Baker*, for Appellant, cited: Provolt vs. C., R. I. & P. R. R., 57 Mo. 256 ; McAulay vs. W. & R. R. 33 Vt. 311 ; State vs. Rodman, 43 Mo. 260 ; Torrey vs. Camden & Atlantic R. R. Co., 3 C. E. Greene 293 ; Greenlaugh vs. Manchester & Birmingham R'y Co., 3 Myl. etc. 785 ; Hentz vs. Long Island & C. R. R., 13 Barb. 648 ; Erie etc. vs. Delaware etc., 6 C. E. Greene, 283 ; Goodwin vs. Cincinnati etc., 18 Ohio St. 168 ; High Inj. §§ 387, 397 ; Commissioners of Highways vs. Dunham, 43 Ills. 86 ; Harness vs. Chesapeake & Ohio Canal Co. 1 Md., 248 ; Ross vs. Elizabethtown & Somerville R. R. Co., 1 Green. 422 ; Browning vs. Camden & Woodbury R. R. 3 Green. 4 ; and commented on Richards vs. Des Moines Valley R. R., 18 Iowa 259 ; Stewart vs. Raymond R. R., 5 S. & M. 568 ; Bowers vs. Bears, 12 Wis. 213.

*Higbee, McGoldrick, & Caywood*, for Respondent, cited: Walther vs. Warner, 25 Mo. 277 ; 1 Redf. Railw. 238, § 3 and notes 4, 5 ; Id. 238, § 6, and note 8 ; High Inj. §§ 392, 393 and note 1 ; §§ 396, 399–401 ; Williams vs. N. Y. Cent. R. R., 16 N. Y. 111(referred to in Till. & Sherm. N. Y. Pr. Vol. 1, 695,) Henry vs. Dubuque & P. R. R. 10 Iowa, 540 ; Horton vs. Hoyt, 11 Iowa, 496 ; High Inj. note 1, § 392 ; and commented on Anderson vs. City of St. Louis. 47 Mo. 479 ; Provolt vs. C., R. I. & P. R. R., 57 Mo. 256.

SHERWOOD, C. J., delivered the opinion of the court.

On the hearing of this cause, the court below made an order whereby it was adjudged and decreed that defendant pay to plaintiff, on or before the 11th day of January, 1875, the amount

of damages adjudged to him at the April term, 1873, on account of certain condemnation proceedings, instituted by defendant, for a right of way over plaintiff's land. And it was also adjudged that defendant pay interest on the sum thus assessed, together with costs, as well of that proceeding as of the present, and that in the event that such payment was not made at the time designated, that a writ of injunction issue restraining defendant from operating its road and train of cars thereon, over plaintiff's premises, until such sum be paid, etc., etc.

This action of the lower court has caused this appeal by defendant. It is assumed by counsel that plaintiff must be presumed to have waived or postponed his right to insist upon immediate payment for his land. On what a slender foundation this assumption rests will be readily seen by reference to the defendant's charter and the agreed facts of this case.

That charter (Acts 1857, § 10, and Acts 1851, 483, §§ 7, 9, 10,) gave " full power to survey, mark, locate and construct a railroad," and " provides, in crder that the progress of the work may not be impeded, that after said viewers have filed their report and plat in the office as aforesaid, the company, after having made a tender of the amount of damages to the person or persons, or made a deposit of the same with the clerk of the county court in which the case may be pending, shall be authorized to proceed in the construction of the work as fully as though no disagreement had arisen."

The parties failing to agree, commissioners were, in July, 1872, at the instance of the defendant, appointed, who assessed the plaintiff's damages at $1.00, which sum, defendant, having already located its road, deposited with the clerk, and proceeded to construct its road. The plaintiff filed exceptions to the report of the viewers, and at the January term, 1873, the court set aside the report and appointed other commissioners, who, at the April term, 1873, assessed plaintiff's damages at $48, and their report was confirmed and judgment rendered accordingly. Meanwhile, however, the defendant's road had been completed and in operation twenty miles west from plaintiff's land, prior to the setting aside of the report of the first commissioners,

and the defendant's insolvency is admitted, an execution having
been issued and returned *nulla bona.*  It is manifest that there
was no *acquiescence* by the plaintiff in the condemnation pro-
ceedings, unless that can be thus termed, which consists only in
*active resistance.*  What more than he has done could be re-
quired at his hands ?  For it seems he could not have enjoined
the company from entering on his land for the purpose of doing
that which the law gave express authority, viz: marking, survey-
ing and locating its road.  And the same remarks are equally
applicable to the subsequent proceedings to condemn the right
of way and the construction of the road.  And this because
the company was only exercising its *statutory powers ;* powers
explicitly granted, as the act in terms shows, in order to prevent
the work from being impeded. (1 Redf. on Rly., § 97, 371 ;
Walther vs. Warner, 25 Mo. 277.) And even if it were doubtful
as to whether equity would interpose by injunction, notwithstand-
ing the grant to the company of legislative authority, still this
doubt should certainly not work the plaintiff an injury, nor should
*laches* or acquiescence be imputed to him because he did not in
addition to, and in conjunction with, his statutory methods of
resistance, appeal also to chancery for aid, when it was at least
doubtful whether any assistance from that quarter could, under
the circumstances, be secured.  It will not be directly claimed,
though this is frequently done in an indirect and roundabout
manner, that the rules of either law or native justice should
change because a *corporation* happens to be plaintiff or defend-
ant.  If, in the present instance, the plaintiff had, of his own
head, *sold* the strip of ground in controversy to an *individual*
defendant, no one would doubt that unless waived by some
affirmative or unambiguous act, the vendor's lien, still existing in
all its original preference and priority, would be capable of enforce-
ment, notwithstanding the insolvency of the purchaser.  Would not
this doctrine, *a fortiori.* apply where the property is seized *in
invitum*—seized by a corporation in derogation of common law
and common right?  If the vendor's lien has its origin in the
idea that it would be unconscionable to allow the vendee to retain
property *voluntarily* sold to him, and not pay its price, would

not such retention be equally against good conscience, where the sale is *compulsory*, and the property transferred by mere operation of law ? It would seem clear, beyond question, that the usual equity of a vendor in this regard would be so greatly strengthened by that imperious constitutional mandate, which prohibits property from being taken without just compensation, as to require, if anything, more cogent evidences of waiver than under ordinary circumstances ; for surely a constitutional right should not be lightly inferred away, nor should courts be ingenious in drawing remote and strained inferences in support of an assumed waiver, where a corporation is to be benefited thereby ; inferences which they would speedily scout, were natural persons, under similar circumstances, invoking remedial justice.

If the law favors uniformity, if, indeed, it is no respecter of persons, there can be no difference in point of abstract principle, nor yet in its application, whether applied to the adjustment of rights between a natural person and a corporation, or where a like adjustment is sought between individuals alone. These remarks are induced by the position of defendant's counsel, before referred to, and by the authorities cited in support of that position.

In the case of Provolt vs. C., R. I. & P. R. R. Co. ( 57 Mo. 256), a case which goes far beyond any other to be found in the books, it was held that ejectment could not be maintained against a railroad company, although failing to pay the owner for his land, and this upon the ground of his having *waived* his right to insist on immediate payment. But though the remedy by ejectment was denied, because of the supposed waiver, it was still held that the plaintiff was entitled to equitable relief, ex. gr. by having a receiver for the road appointed. That case is claimed as the counterpart of this, and so it would seem to be, and it is insisted that a waiver which should preclude a recovery in ejectment, should likewise preclude an injunction. And there would appear to be no little force in the observation, because either method of redress, if enforced, would effectually interfere with the interests of " *the public*," by preventing the operation of

the road, which appears to be regarded by defendant's counsel as a very strong point.

In Walker vs. C., R. I. & P. R. R. Co., (same volume), it was held that mere silence and inaction for the time being, on the part of the land owner, while a railroad was being built over his property, would not be construed into acquiescence nor estop him from his action of ejectment. And in Walther vs. Warner (25 Mo. 277), cited with approval in the Provolt case, it is said in conclusion, that "all the cases in all the books seem to assume that an individual cannot be *absolutely deprived* of his property without the *actual payment* of the assessed price, even though a proper provision is made in the act authorizing the taking of it; and perhaps it would be better to hold that, even in cases where proper provision is made for the payment of the price, so that the property is allowed to pass, it passes subject to the condition that the price is subsequently paid, so that if for any cause it be not paid, the party may re-possess himself of it on account of the condition broken."

It is altogether unnecessary to say whether the facts in the Provolt case were of a character to establish the inference of a waiver. It is sufficient to observe that, applying the rule before announced, the same rule which should govern between ordinary vendor and vendee, we have after careful consideration of the facts before us, been unable to discover anything on the part of plaintiff, even remotely indicative of an intention to surrender, or so much as postpone the right which the constitution so sedulously protects. For he met the railroad company at the very threshold of controversy, exhausted every means of statutory resistance, and I, for one, will never say that *this* amounts to either *laches* or *acquiescence*, or that his appeal to a court of equity for the enforcement of a plain, constitutional right shall be in vain.

The case of McAuley vs. Western Vt. R. R. Co., (33 Vt. 311) an action of ejectment cited in the Provolt case as "*strikingly in point*," originated in a *written contract* between McAuley and the railroad company, to take stock at its par value for his damages. And the company entered with the *consent* of the

owner, and completed its road in 1851. During the progress of
the work, and when near completion, the parties disagreeing
*merely* as to the *quantum* of damages, proceedings were insti-
tuted by the company, damages assessed, and their amount in
stock deposited with the clerk, McAuley having repeatedly re-
fused to receive it, and there it remained at the commencement
of the action of ejectment, *six years* thereafter.   But there was
no attempt on his part to revoke the license, granted the company
to enter on his land, although he discovered the alleged fraud
(which consisted in the particular line of location of the road
through his land) before the damages were assessed.   Mean-
while, however, the decree of foreclosure obtained upon the first
mortgage became absolute, and the title to the road and fran-
chise passed to the trustees under the mortgage.   And this ap-
pears to have occurred prior to the bringing of the ejectment
suit.   The only burden of McAuley's complaint, as is clearly
shown by Judge Redfield's opinion, was *not* the taking of his
land ; on this score he had and made no objection until he brought
his suit.   On the contrary, " his great desire" (as the learned
judge remarks) "seems to have been that the damages should
be agreed upon, and that he should be released from all claim
under the written agreement to accept *stock*.   To this extent his
remonstrances were sufficiently loud and intelligible. "   *   *   *
" And he was therefore willing that they should go forward in the
construction of their road, if they would only *agree* to pay him
the *money* for his land damages."

All these circumstances were taken into consideration, and the
plaintiff was held not entitled to maintain his action.   And the
obvious justness of that decision, proceeding as it does on the
grounds of license, in the first instance, under a written agreement,
of silent acquiescence for six years after the discovery of fraud,
and the acquisition of rights by innocent third parties upon the
faith of that agreement, cannot be questioned.   But the facts of
that case bear not the faintest resemblance to this ; and it is a
total perversion of language to assert the remotest analogy be-
tween them.   And the same may be said of Goodin vs. Cincin-
nati and White Water Canal Company (18 Ohio St., 169), for

that was a bill in equity between a portion of the stockholders of the Canal Company and two railroad companies, in consequence of a fraudulent combination, whereby the *canal* was despoiled and a railroad track built thereon. There was *laches* in that case also, and the complaining stockholders of the Canal Co. might well be "*presumed*" to know and acquiesce in what their *own directors* were doing.

Greenhalgh vs. The M. & B. R. R. Co., (3 Mylne & Cr. 784) was a proceeding for *specific performance* of a written contract between the plaintiff who was an "*assenting party*" to a bill offered in parliament to establish .the South Union R. R. Co., which, by act of parliament, was consolidated with a bill for the formation of the M. & B. R. R. Co. A temporary injunction in aid of the proceeding for specific performance was granted, which, on final hearing, was dissolved on the grounds above stated, in connection with the fact that the plaintiff had written to the company expressing his entire willingness to let it have such portion of his land, embraced in the written contract, as might be desired. ·

Toney vs. C. & A. R. R. Co. and R. & D. B. R. R. Co. (3 C. E. Green., 293) was merely a proceeding by the *contractors* who built a *branch road* for one company to compel defendants to pay for the work, and to restrain the R. & D. B. R. R. Co. from using the branch road till paid for. Injunction was refused because plaintiff's *remedies at law* were ample, and it was observed : " If the road was in their possession they could maintain trespass ; and if not in their possession and not let to the company, possession could not be obtained by ejectment."

Erie R. R. Co. vs. Del., Lack. & Western and Morris & Essex R. R. Co's, (6 C. E. Green., 283) was a contest between rival railroad companies as to which was entitled to a right of way, the *title* to which was in *dispute*. Besides the complaining company had not only witnessed without objection the construction of the rival road, but had lent its "*active assistance*" by selling for a large sum of money a portion of his own land to aid in the construction of the road complained of, and it was held

that injunction could not be granted, and this very properly, owing to the equitable estoppel which had clearly arisen.

There is nothing, therefore, in the incidents of these cases at all parallel to the case at bar, or which give the slightest support to the position taken by defendant's counsel; and the like observation applies to Commission of Highways vs. Dunham, (43 Ill. 86); Ross vs. E. & S. R. R. Co., (1 Green. Ch. 422); Browning vs. C. & W. R. R. Co., (3 Green. Ch. 47); and in Harness vs. Chesapeake & Ohio Canal Co., (1 Md. Ch. 248). also cited for defendant, where an injunction *was* granted, it was held that the act of the legislature only conferred a " *temporary privilege* " on the company to proceed with its work; a privilege which *ceased* when the damages assessed were not paid. And it was also said: " If the owner has the right to insist upon the payment of the money before his property is wrested from him, (and such right cannot be disputed) what is to prevent him from invoking the aid of the court for his protection, if the judgment for the money remains unpaid. The argument that the judgment is no more than a general lien, does not militate against this right of the owner of the land. His title does not rest upon his right, as a judgment creditor, but upon the act of assembly, and upon that settled and fundamental doctrine according to which the owner of property, taken for public use, is entitled to compensation, and as Chancellor Kent says, " to have it paid before or at least concurrently with the seizure and appropriation of it."

The further position is taken for defendant, that although the road is completed and in operation, the owner not paid, the company bankrupt, and all the injury done to plaintiff that can possibly be done, and after " *the public has acquired a right*," that this is a reason why equity should not interpose by granting restrictive relief.

This position is taken with a very poor grace by a corporation, which, under the arbitrary forms of law, has wrested property from its owner. But the complexion of this case is not at all altered by any or all of the aforementioned circumstances. That mythical personage, " *The Public*," so often summoned as a conven-

ient accessory when some flagrant wrong upon constitutional right is in contemplation, can only " acquire rights " in the land even of the humblest citizen *by payment therefor*. The plaintiff not being guilty of *laches*, not having waived or postponed his claim, *his* right to pay for his property as a *constitutional condition precedent* still exists in all its original vigor. And for the enforcement of this right equity will fully supply a remedy, and such a remedy as will fully meet the exigencies of the case. For as Judge Story so eloquently observes : " The beautiful character, pervading excellence, if one may so say, of equity jurisprudence, is that it varies its adjustments and proportions so as to meet the very form and pressure of each particular case in all its complex habitudes." (1 Sto. Eq., Jur. § 439.) And Lord Chancellor Cottenham repeatedly laid down the rule that it was the duty of a court of equity to " adapt its practice and course of proceeding, as far as possible, to the existing state of society, and apply its jurisdiction to all those new cases, which, from the progress daily making in the affairs of men, must continually arise." (22 Redf. Railw., 310, § 9, and cas. cit.)

Now it is obvious that were the plaintiff's lien as vendor to be enforced, it could only result in a sale of that portion of the railway track passing through plaintiff's land ; a something which would be of no use to a third party, and if bought in by plaintiff, himself, he would be in the same situation as at present, without compensation for the injury done that portion of his land covered by the railroad track, and without pay for the damage necessarily resulting to that portion not thus included. And it is equally obvious that it would be quite as unavailing to have a receiver appointed to administer the affairs of a *bankrupt* corporation. But even were this not so, a court of equity, owing to the flexibility of its powers, is not confined to a *single* method of affording redress, but will, as just seen, adopt that method of administering relief, as will, without circuity of action, compel the party in default to do equity.

The method best promotive of such end is that resorted to by the court below, and abundantly sustained by the following authorities :

In Stewart vs. Raymond R. R. Co., (7 Smede and Marsh, 568) where the road was already completed and in operation, but the company insolvent, an injunction was granted until the payment of damages, and if not paid in a reasonable time the injunction to be perpetual.    In that case it is very pertinently said: "The company does not pretend that the purchase money has been paid; neither does it deny its liability to pay the damages awarded. It only insists that it is entitled to an indefinite credit and to the intermediate enjoyment of the easement, until the money to pay can be made.    We know of no principle to sustain this assumption. * * * If the company has no right to the easement before the payment of the damages, the proposition that Stewart has a right to restrain the passage of the cars until such compensation, would seem to follow as an inevitable consequence."    To the same effect are 1 Redf. Railw. 241, § 6, and cas. cit.; Richards vs. D. M. V. R. R. Co., 18 Iowa, 259 ;  Henry vs. D. & P. R. R. Co., 10 Id. 540 ;  Horton vs. Hoyt, 11 Id. 496 ;  High Inj., § 393 ;  Davis vs. L. C. & M. R. R. Co., 12 Wis. 16 ;  Cozens vs. Bangor R. R., 12 Jur., N. S. 738.    And the doctrine asserted by most of the authorities, (Nichols vs. Salem, 14 Gray, 490 ; High. Inj. § 394 ;  New Albany vs. Connelly, 7 Ind. 32 ;  Parham vs. Justices, &c., 9 Geo. 341 ;  Keene vs. Bristol, 26 Penn. St. 46), that where a statutory remedy is provided for obtaining damages for private property, taken in the construction of roads, equity will not extend its protection until such statutory remedy be first exhausted, does not affect the *status* of the plaintiff, as he has brought himself fully within the rule by exhausting all statutory measures of redress before appealing elsewhere for aid. The doctrine above mentioned, that it is wholly impossible for the land owner, prior to the exhaustion of the remedies the statute provides, "*to obstruct or in anywise impede the progress of the work*," as well as the obvious corrollary deducible from such a premise, would seem in the Provolt case to have entirely escaped observation.

The foregoing reasons seem conclusive that the judgment should be affirmed, and it is so ordered.    All the judges concur.