THE FARMERS' LOAN & TRUST CO. *v.* CANDLER *et al.*

1. By section 1979 of the code, contractors to build railroads are entitled to liens upon such railroads, but each lien is upon the whole railroad to which it applies. There is no provision of law allowing a contractor to set up and enforce a lien upon a part of any railroad, though such part may be all of the road which he constructed or aided to construct.
2. As, under section 1990 of the code, the verdict must set forth the lien allowed, and the judgment and execution must be awarded accordingly, a verdict and judgment which attempt to set up and enforce a lien upon a specified portion of a railroad are void upon their face, so far as the contractor's special lien is concerned.
3. A verdict describing the lien intended to be allowed thereby in these terms: "that the plaintiff have a lien as a contractor to build railroads upon that part of the Gainesville and Dahlonega railroad from its terminus in the city of Gainesville, to the Chattahoochee river in Hall county, including its right of way, roadbed, depot grounds, and all other property belonging to said railroad company, for the sum aforesaid," etc., does not set up a lien upon the whole railroad referred to, but only attemps to do so upon the part extending from Gainesville to the Chattahoochee river.

May 8, 1891.

Liens. Railroads. Verdicts. Judgments. Before Hon. G. H. PRIOR, judge *pro hac vice.* Hall superior court. July adjourned term, 1890.

Reported in the decision.

CALHOUN, KING & SPALDING, H. H. DEAN and REID & STEWART, for plaintiff in error.

v 87-16

R. H. BAKER, W. P. PRICE, J. B. ESTES and S. C. DUNLAP, *contra.*

LUMPKIN, Justice.

The Gainesville and Dahlonega railroad, including its right of way, franchises and all other property, was sold as a whole by a receiver duly appointed. A contest arose over the proceeds of the sale. A. D. Candler claimed the same upon a judgment foreclosing a contractor's lien, and his right thereto was contested by the Farmers' Loan and Trust Co., who claimed under a mortgage, or deed of trust, securing certain bonds which had been issued by the railroad company. The fund was not sufficient to satisfy the claims of both. The case was submitted to the decision of the court upon the finding of a jury on certain questions of fact, and a statement of facts agreed upon by the parties. The result was a decision in favor of Candler. The controlling questions made by the record are those set forth and adjudicated in the head-notes.

1. An examination of section 1979 of the code will show that it does not contemplate a lien upon a portion of a railroad. The language plainly and unmistakably means that the lien thereby given to a contractor to build railroads must be upon the whole road. If the law were otherwise on this subject, it would be impolitic and impracticable, and would often lead to disastrous consequences. To sell a railroad in detached portions would utterly destroy, or greatly diminish, the value of the entire property; and yet this would inevitably result if a contractor could have a lien upon a part only of a railroad, and enforce the same by judgment and sale. We quote the following apt language from Knapp *v.* St. Louis, etc. Ry. Co., 7 Am. & Eng. R. R. C. 395 : "A railroad with its depots, bridges and other appurtenances, is no less an entirety than a dwelling-house with its kitchen, its chimneys and its door-

steps; and yet no one has ever supposed that a mechanic's lien could be enforced against the door-steps or chimneys of a dwelling-house, or that they could be sold and removed, to the utter destruction of the whole property." The suit brought by Candler for the foreclosure of his lien contemplated a judgment of foreclosure against the whole road, but the verdict and judgment thereon covered only that part of the railroad lying between Gainesville and the Chattahoochee river.

2. Section 1990 of the code, providing for the foreclosure of liens on real property, declares that if the lien is allowed, the verdict shall set it forth and the judgment and execution be awarded accordingly. It follows, from what has already been said, that a verdict and judgment attempting to set up and enforce a lien upon a specified portion of a railroad are void upon their face, so far as the special lien is concerned; and therefore the money in court could not legally be awarded to Candler upon his judgment, considered as a special lien.

3. It was contended that the language of the verdict and judgment purporting to establish Candler's special lien extended to and covered the entire railroad and its property. This language is quoted in the third headnote, and we think a fair construction of it leads to the conclusion that it covers only that part of the railroad situated between Gainesville and the Chattahoochee river, and the property immediately therewith connected. The words "including its right of way, roadbed, depot grounds and all other property belonging to said railroad," must be construed with the words preceding them, viz. "that part of the Gainesville and Dahlonega railroad," etc., and the obvious meaning is, that the items of property following the word "including" are those only which are situated within the limits designated.

The court below did not consider or determine whether or not Candler's judgment, considered merely as a general lien on the railroad's property, was superior to the mortgage, but adjudged that his special lien as a contractor to build railroads was lawfully foreclosed, and that his judgment was valid as such against the property and entitled to take the money. This ruling we think was error, and the judgment of the court below is therefore                           *Reversed.*