SCARRITT *et al.*, v. THE KANSAS CITY & SOUTHERN. RAILWAY COMPANY, *Appellant.*

### Division Two, March 5, 1895.

**Railroad**: EMINENT DOMAIN: ACQUIESCENCE OF LANDOWNER: EJECTMENT: ESTOPPEL. A landowner who does not forbid employees of a railroad company entering upon his premises and beginning the construction of a railroad thereon, but enters into negotiations with the company's representative, and, upon failure of such negotiations, relies upon assurances of future payment made by the representative and allows the work to proceed without protest or hindrance, can not, after the road is completed, maintain ejectment against the company for the land.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED.

Ejectment for a strip of ground occupied by the defendant company for its tracks and right of way through the land of plaintiff's testator, the action having been brought by him.

The answer of defendant, so far as necessary to quote it, is as follows: "That in the year 1882, with the knowledge, consent and acquiescence of plaintiff, defendant constructed its road on and over a part of the land in controversy, and has ever since that time been using and in possession of the same, with the knowledge and by the acquiescence of the plaintiff; that, during all the years past, plaintiff has remained idle, and permitted defendant to construct and operate its said road, and expend thereon the said sum of $2,000,000, without objection, but acquiescing therein. And defendant says that by reason of the acts of plain-

tiff, and his counsel, and acquiescence in the use and occupation of said land, plaintiff is estopped from maintaining this action, and it prays it may go hence with its costs." The reply was a general denial.

The substance of the evidence is the following:

Nathan Scarritt: "I bought the land in controversy in 1866, had it fenced and continued in possession up to the time the railroad company took possession of it. I think it was about 1882, seven or eight years ago, and they have been using it ever since for railroad purposes. I first resided on the forty acres in controversy, then built my house on the forty adjoining, where I now reside. I had a tenant on the land in controversy when the railroad company took possession; they tore down the fences, burned up the rails and cut down several trees before anybody spoke to me about it; Mr. Hickman came to see me; he wanted to negotiate about the land; proposed several prices, but no agreement was concluded; they were grading; I was expecting to get pay for the land; the reason I did not request it at that time was that he assured me that I would be paid."

"*Q.* You didn't object to the gentlemen going in there and laying their track, but you wanted pay for it? *A.* Yes, sir; I wanted pay for it.

"*Q.* And they went in there and put that track down with your knowledge, and you simply demanded or requested that you should agree as to the compensation to be paid you for the land? *A.* The reason I did not take any steps at that time to get the compensation for my land was that *he assured me it would be paid. He persuaded me to let the work go on, and I had confidence in him. He was a friend of mine, and that is the reason I didn't take any steps at the time to get compensation for my land or get any pay for it, so it ran on.*

"*Q.* Now, I understand you, it was on account of the confidence you had in Judge Hickman, who prom-

ised you should be paid for the property, that you permitted them to lay the track on the road? *A.* That I did not resist or take steps; yes, sir.

"*Q.* What is the reason you did not take steps from the time you had the last conversation with Judge Hickman until the institution of this suit? *A.* Well, I knew that I would get pay for my land, by legal process if they didn't pay me without; that is about the sum and substance of it.

"*Q.* *You didn't object to the railroad being there, but you wanted to be paid for it? A. Yes, sir; that is about it.*

"*Q.* You never made any agreement with Hickman to let him have the land? *A.* No, sir; no agreement was concluded.

"*Q.* After they got possession of the land and got the track down, did they ever say anything to you about it? *A.* Never a word.

"*Q.* Tell the jury whether that railroad has been operated since 1882, or state the condition of it. *A.* Well, whether cars have been running regularly on it, like other roads, I don't know. They have been using it, though. They seem to use it a good deal as a side-track or switch from that other road.

"*Q.* Up to what time? *A.* Well, they have possession of it yet.

"*Q.* Didn't it remain, after grading, in disuse several years? *A.* Yes, sir; it has been in disuse, but what part of the time I can't say; they have had use of the track; freight cars standing on the tracks.

"*Q.* State to the jury, if you know, whether or not it was a question, whether it would ever be completed and used, up to three or four years ago? *A.* Well, it was problematic in my mind. I never talked with anybody that I know of about it, but from what I saw, it was a question whether it would be killed or

become a railroad; that is one reason why I did not take steps sooner; I did not know but what the whole thing would fall through and they would not want the land; wouldn't claim it."

The testimony of Gray, the manager of defendant company, shows it has been running freight trains over the strip in controversy since 1883.

This action was brought December 24, 1888. Between the periods mentioned, the defendant company constructed its road, one hundred and eleven miles long, at a cost of $2,000,000. A verdict having been returned for plaintiff, defendant took the usual steps and finally appealed to this court.

*Johnson & Lucas* for appellant.

If defendant constructed its road over the land in controversy with the knowledge and acquiescence of the plaintiff, and did not pay therefor, an action for the value of the land accrued to plaintiff, but not the right to maintain ejectment. *Provolt v. Railroad,* 57 Mo. 256; *Avery v. Railroad,* 113 Mo. 566; *Webster v. Railroad,* 116 Mo. 117; *Childs v. Railroad,* 117 Mo. 431; *Baker v. Railroad,* 57 Mo. 255; *Kanaga v. Railroad,* 76 Mo. 213; *Gray v. Railroad,* 81 Mo. 134; *McClellan v. Railroad,* 103 Mo. 313; *Railroad v. Saltweddle,* 36 Am. and Eng. Railroad Cases, 577, and note; Lewis on Eminent Domain, secs. 647, 648. Defendant's demurrer to the evidence and instructions ought, therefore, to have been given, and plaintiff's instructions refused, and, for failure so to do, the case should be reversed.

*W. C. Scarritt* for respondent.

Defendant's instruction number 2 is not the law, and the court did not err in refusing to grant it. It demands a verdict upon the bald fact that trains were

running over the land in controversy at the date of trial. That is to say, the plaintiff at the time the suit was begun may have had a cause of action by reason of defendant's wrongful entry and possession, but by continuing that wrongful conduct, defendant could defeat that right to recover. But the fact alone of trains being operated, even at the time suit was brought, will not warrant a recovery. "It is well settled in Missouri that ejectment will lie where a railway company builds its road over land to which it has acquired no requisite title by condemnation or conveyance or license expressed or implied." *Dodd v. Railroad*, 108 Mo. 585; *Walker v. Railroad*, 57 Mo. 275; *Bradley v. Railroad*, 91 Mo. 500; *Greer v. Railroad*, 82 Mo. 653. A failure to pay compensation assessed in a condemnation proceeding will constitute a valid ground for ejectment by the owner. *Cary v. Railroad*, 100 Mo. 292. And if the company enters upon land without complying with the requisites of the statute, it is liable in trespass or ejectment. *Ring v. Bridge Co.*, 57 Mo. 496; 1 Redfield on Railways, p. 382. (2) Where a railroad company thus takes possession of land unlawfully, no subsequent silence or inaction on the part of the landowner can defeat his right to recover in ejectment. *Childs v. Railroad*, 117 Mo. 432; *Bradley v. Railroad*, 91 Mo. 500; *Walker v. Railroad*, 57 Mo. 275; *Railroad v. Calwell*, 15 Atl. Rep. (Pa.) 927; *Railroad v. Randolph Town Site Co.*, 103 Mo. 467; Lewis on Eminent Domain, secs. 647, 648; *Railroad v. Adams*, 27 Fla. 443; Mills on Eminent Domain, sec. 90; *Graham v. Railroad*, 27 Ind. 260; *Hibbs v. Railroad*, 39 Iowa, 340; *Conger v. Railroad*, 41 Iowa, 419; *Smith v. Railroad*, 67 Ill. 191; *Hooper v. Railroad*, 78 Ala. 213; *White v. Railroad*, 64 Iowa, 281, *Railroad v. Bruce*, 102 Pa. St. 23; *Railroad v. Benitas*, 59 Texas, 326; *Sherman v. Railroad*, 40 Wis. 645. (3) There are no facts disclosed by the evidence in this case

which would, under the distinction made by the decisions of this court, warrant the submission of this cause to a jury upon the theory of estoppel.

SHERWOOD, J.—Under the view we take of the foregoing facts in evidence, but one of the instructions denied defendant need be discussed, and that one in the nature of a demurrer to the evidence.

Mere silence or inaction of the owner whose land has been invaded, will not debar him of the use of any of the machinery of the law, whether legal or equitable, created for his protection. But where such owner goes forth to meet the invading party of railroad constructors, sees them doing acts of which every blow of the axe and every thrust of the spade is a trespass, and yet does not forbid such being done, but, on the other hand, holds converse with the representative of the railroad company, enters into negotiations with him, and though these negotiations are unsuccessful, relies on the assurances of future compensation made by such representative, thereby waiving prepayment, which otherwise he might demand and secure, and suffers the work to go on without protest or hindrance, such owner, according to all our rulings, though he may recover for the damages done his property, yet can not maintain ejectment and oust the company, whose acts, except at the unlawful outset, have been done under the sanction of an unequivocal, though implied, permission of the owner. *Provolt v. Railroad*, 57 Mo. 256; *Baker v. Railroad*, 57 Mo. 265; *Walker v. Railroad*, 57 Mo. 275; *Gray v. Railroad*, 81 Mo. 134; *Bradley v. Railroad*, 91 493; *Cory v. Railroad*, 100 Mo. 282; *McClellan v. Railroad*, 103 Mo. 313; *Railroad v. Town Site Co.*, 103 Mo. 457; *Avery v. Railroad*, 113 Mo. 561; *Webster v. Railroad*, 116 Mo. 117; *Childs v. Railroad*, 117 Mo. 414.

The case of *Walker v. Railroad,* cited by plaintiff *supra,* was one where the owner was not present during the progress of the work, and was only informed of the trespass by the letter of a friend. Mere inaction was all that characterized his conduct. And in the opinion in that case, it is distinctly and expressly distinguished from *Provolt's case,* above cited, where there were circumstances of acquiescence and implied waiver of prepayment.

In the case just mentioned, it is said: "His conduct surely led the company to believe such was his purpose and induced them to pursue a course and expend large sums of money which, otherwise, they would not have done. If plaintiff intended to rely on his rights and make present payment a condition precedent, he should have objected and forbidden the company to interfere or to do any work on his land till the question of damage was settled. But this he did not do. He acquiesced in the proceedings of the company to the extent of not insisting upon the prepayment as a condition precedent; and, after having done so, we do not think that he can maintain ejectment."

*Provolt's case* and *Baker's case* have never been questioned in this court, and have become a rule of property in this state. Guided by those authorities, we hold the demurrer to the evidence well taken; that plaintiffs are estopped by the circumstances detailed in evidence from maintaining their action, and hence reverse the judgment. All concur.