## CHARLESTON.

### McKay v. Ripley & M. C. V. R. Co.

Submitted January 9, 1896—Decided April 1, 1896.

1. EMINENT DOMAIN—COMPENSATION.
   Section 9, art. III, of the Constitution of the state provides that private property shall not be taken by any company incorporated for the purposes of internal improvement until just compensation shall have been paid or secured to be paid to the owner.

2. RAILROADS—PUBLIC HIGHWAYS.
   Section 9, art. XI, of the Constitution reads as follows: " Railroads heretofore constructed or that may hereafter be constructed

in this state are hereby declared public highways and shall be free to all persons for the transportation of their persons and property thereon under such regulations as shall be prescribed by law."

John H. Riley for appellant, cited 11 Leigh, 605.

W. A. Parsons and J. A. Wooddell for appellee, cited 37 W. Va. 582; 27 W. Va. 510; 3 Allen, 133; 7 Am. & Eng. Enc. Law, 300, n. 1; 12 Id. 210, 211, n. 1; 19 Id. 855, 856, 857; 31 W. Va. 427; 7 Colo. 184; 9 N. J. Eq. 286; 12 Mass. 513; 44 Md. 506; 114 Mass. 133; 14 S. C. 148; 1 Hun, 546; 21 N. Y. 187.

Holt, President :

On appeal from decrees of the Circuit Court of Jackson county enforcing a vendor's lien by sale of the land, which is a section of some nine hundred feet in the middle of the railway company's right of way and railroad track.

The facts are as follows: On the 7th day of July, 1886, by written contract of that date, Abraham McCoy, for the consideration, *inter alia*, of two hundred and fifty dollars, sold and agreed to convey to the appellant, the railroad company, in fee simple, a certain parcel of land, described in the contract, for a railroad track, being forty feet wide and about nine hundred feet long, through the farm of Mc-Coy. The railway company entered upon the land, and built its railroad, and had been running and operating the same, with the consent of McCoy, for more than two years before this suit for specific performance was brought on the 19th day of February, 1891. The fixing of the route along that line, which enabled McCoy to avail himself of the conveniences and advantages of its location and construction through his land, was expressly made a part of the consideration, and that was performed; but the additional consideration of two hundred and fifty dollars had not been paid. On the 19th day of February, 1891, plaintiff, Abraham McCoy, filed his bill against the railroad company to enforce the payment thereof as a vendor's lien by sale of the land. The defendant railroad company appeared and demurred to the bill, assigning as ground of demurrer that

the court had no jurisdiction to decree a sale of the separate part of defendant's railroad and land owned and used as a part of its track. On the 19th day of March, 1892, plaintiff filed as an escrow a deed of general warranty for the land, to be delivered on payment of the purchase money; and by decree of that date the court overruled defendant's demurrer, and defendant answered that its road was built and operated from the town of Ripley, W. Va., to the Ohio river, a distance of about thirteen miles; that the parcel of land sought to be sold included about three hundred yards of defendant's railroad, about four and one fourth miles from its western and eight and one fourth miles from its eastern terminus, to which answer plaintiff replied generally. Thereupon the court entered a decree against the defendant company for three hundred and one dollars and sixty one cents, the amount of the purchase money, including interest to date, giving sixty days in which to pay, and, in default of payment, decreeing a sale on credit of the section of the railway in the bill and proceedings mentioned, and appointing a commissioner for the purpose, and the railroad company was given the right to remove from the land decreed to be sold all the rails, ties, and all personal property then on the land. Under this decree the commissioner sold the land, but the sale was set aside; and, the plaintiff having died, the cause was revived in the name of Z. T. McKay, his administrator, who filed an amended and supplemental bill, making the widow and heirs of Abraham McCoy parties defendant. On the 3rd day of March, 1893, the court entered another decree of sale, under which the commissioner sold the real estate to plaintiff, Z. T. McKay, administrator of Abraham McCoy, for the sum of two hundred and twenty five dollars. To this sale defendant excepted, but the court overruled the exceptions, and confirmed the sale as made to plaintiff, Z. T. McKay, and appointed a commissioner to convey the same to him, the purchase money, costs, and expenses of sale having been paid; and a writ of possession was awarded the purchaser to cause him to have possession of the land, and defendant appealed.

The first and important question presented is the propri-

ety of the decrees complained of, which sell a section of nine hundred feet out of the middle of this railway, and, by thus separating its ownership and use from the line of the railroad, destroy it as a public highway. There are several reasons, according to the facts as here presented, why this should not have been done. (1) Section 9, art. III; of the state Constitution provided that McCoy's property should not be taken or damaged by this railway company without just compensation first paid or secured to be paid. This protection he waived. He induced the company to take it and build the road, and has permitted it to be completed and used for more than two years. Thus he has permitted it to become a public highway, free to all persons for the transportation of their persons and property thereon; for such section 9, art. XI, of the Constitution declares it to be, at the same time conferring such right of transportation. (2) Such remedy, if lawful, was in this case harsh and inequitable, because, as far as this record shows, wholly unnecessary; for, by section 8, art. XI, of the Constitution, the rolling stock and all other movable property belonging to the railroad company is considered personal property and is liable to execution and sale in the same manner as the personal property of individuals, and there is nothing to show that the decree could not have been thus made, or that the railway company is insolvent, or, in fact, owes any other debt. (3) There is nothing to show that the debt might not have been paid out of the earnings of the road. (4) It might have been enforced by injunction from using the road until the price was paid. 1 Redf. R. R. 246; *Cosens* v. *Railway Co.*, 1 Ch. App. 594. (5) If the road must be sold, it should be treated as an entirety, and sold as a whole, giving plaintiff priority as to such fractional part. In that mode it would not be destroyed as a public highway, and the rights of the public therein would not be impaired, whereas, the sale of such fraction destroys it as a highway, in the very teeth of the Constitution, and in violation of the rights of the public. See *Railroad Co.* v. *Lewton*, 20 Ohio St. 401; *Farmers' Loan & Trust Co.* v. *Canada & St. L. R. Co.* (Ind. Sup.) 26 N. E. 784; *Evans* v. *Railway Co.*, 64 Mo. 453; *Provolt* v. *Railroad Co.*, 69

Mo. 633; *Trust Co. v. Candler*, 87 Ga. 241 (13 S. E. 560). On having prepayment, see *Scarritt v. Railway Co.*, 127 Mo. 298 (29 S. W. 1024).

A court of equity makes it a point to see that its sales are so made as to bring the best price, removing clouds, *etc.*

Such a sale as this inevitably leads to a sacrifice of the property. The sale under the decree was excepted to, and for the reasons already given should not have been confirmed. Ordinarily, the administrator, buying the land under such circumstances, would hold it as a part of the personal estate of his intestate; but, if the sale had stood as properly made, I can not see what concern the railroad company could have had in that question.

As to the conveyance of the legal title from the heirs at law of the vendor, either to the railroad company on payment of the purchase money, or to any purchaser of the road, there can be no difficulty, as the court has the heirs before it as parties to the suit, and can appoint a commissioner to execute the same on their behalf, according to section 4, chapter 132, p. 838 of the Code. See, also, *Clarke v. Curtis*, 11 Leigh, 559. There is nothing to show that this is a mail route, but I take for granted that it is. It is certainly a public highway. The state is not represented in this suit. When a man begins to break up and discontinue a public highway of the state, and stop the transportation of the United States mails, he will in all likelihood be called upon to show his authority. I should regret to give occasion, without the slightest necessity for it, to placing this purchaser in any such embarrassing attitude. But, the Court being equally divided, the decrees complained of must be affirmed.

BRANNON, JUDGE:

I can not see why one selling land for right of way to a railroad company by executory contract may not have specific performance in equity of the contract. The company could have relief in equity against him to compel a conveyance, and he ought to have his correlative remedy, as the remedies ought to be mutual. *Bumgardner v. Leavitt*, 35 W. Va. 194 (13 S. E. 67). He can not sue in ejectment, as it

seems to be held, in most of the states, that where one lets a railroad company, by express contract or license, construct its railroad, and begin its operation, he can not maintain ejectment. Mills, Em. Dom. § 140; Lewis, Em. Dom. § 648. There is some conflict of authority as to this. But in this state, under section 20, chapter 90, Code, no one who sells land by writing signed by him can have recovery of possession at law. He must sue for purchase money either at law or in equity. A judgment at law against a railroad company would be frequently abortive, by reason of insolvency or mortgages on rolling stock or other property.

When the contract was made the parties looked to the property conveyed as security. It is a part of the contract.

It is said that the public has rights which would be impaired by a sale of a section of the track, but I reply the party's right is prior to and higher than that of the public.

The company took the land on condition of payment. The public claims under the company, and can have no higher right than it. The party contracted only with it. In *Evans* v. *Railway Co.*, 64 Mo. 453, when this plea was made against the citizen claiming compensation for his land, the court said, what seems to me just and solid argument: "That mythical personage, 'The Public,' so often summoned as a convenient accessory when some flagrant wrong upon constitutional right is in contemplation, can only 'acquire rights' in the land even of the humblest citizen by payment therefor." An English judge said he was "not inclined to listen to any suggestion of public interest as against private rights acquired in a lawful way. I do not think that the interest of the public in using something that is provided for their convenience is to be upheld at the price of saying that a person's property is to be confiscated for that purpose." *Stretton* v. *Railway Co.*, 40 Law J. Ch. 58. So plain is the right of the citizen, as paramount to that of the railroad company and the public under it, that the following extract from Lewis, Em. Dom. § 618, is clearly held by abundant authority: "Another mode of enforcing payment indirectly is by enjoining the use of the land taken until the compensation is paid. This has been held as the proper remedy, and is available, not only against the party con-

demning, but also one claiming under him by lease or otherwise. The plea of public inconvenience is no answer to the prayer for this remedy, since the public can derive no permanent rights in private property except on payment of just compensation provided by the constitution." An injunction debars, perhaps permanently, the public use.

When the company is insolvent, it would often be an inefficient remedy. But in this state one selling land by executory contract, retaining the title, has a lien on the specific land, enforceable in equity by its sale, and where such lien exists it has been held that there may be a sale of the particular land sold. Lewis, Em. Dom. § 620; 2 Story, Eq. Jur. § 1231; *Provolt* v. *Railroad Co.*, 69 Mo. 633; *Evans* v. *Railway Co.*, 64 Mo. 453; *Vorner* v. *Railroad Co.*, 55 Iowa, 677, 683 (8 N. W. 534); *Davies* v. *Railroad Co.*, 56 Iowa, 192 (9 N. W. 117); *Mims* v. *Railroad Co.*, 3 Ga. 333; *Gillison* v. *Raiload Co.*, 7 S. C. 173. I would hold the same as to a vendor who conveys title retaining a lien. But it is said the plaintiff must sell, not the particular land he sold to the company, but the whole railroad line. The case of *Railroad Co.* v. *Lewton* 20 Ohio St. 401, is the only case I know of so holding. Several reasons against this occur to me. The plaintiff, as to other parts of the railroad line, is only a general creditor, having no lien. It is unjust to the railroad company and the public to sell the entire line for a debt on a small part. Such was never the contract. Then, again, the entire line may be overmortgaged, and it would be necessary to convene the mortgage debts, fix their rights, and, treating the entire line as a unity, the plaintiff might get nothing, owing to prior claims, unless the proceeds would be apportioned, and that could not readily be done.

What right have we to compel this one man, electing to look for his pay to the particular land he sold, to sell the whole road, and enter into the costly, slow work of convening several mortgages of millions of dollars to get his few hundreds. His contract contemplated no such thing. In the Iowa case, *supra*, *Varner* v. *Railroad Co.*, the court says there is no objection to relief by sale of part, that the company holds the land subject to plaintiff's rights, that it makes no difference that it is a sale to a railroad company

over a private person, and that the company may be dispossessed of the land by judicial sale.